PIERCE, Justice,
for the Court:
¶ 1. This appeal comes to this Court from the Rankin County Circuit Court’s denial of David Abernathy’s Motion for Judgment of Acquittal Notwithstanding the Verdict and, in the alternative, Motion for a New Trial.
FACTS AND PROCEEDINGS BELOW
¶ 2. On August 24, 2006, David Abernathy was indicted for the felony offense of sexual battery in violation of Mississippi Code Section 97-3-95(l)(a) (Rev.2006). Abernathy waived arraignment and entered his plea of not guilty the same day.
¶ 3. These charges arose from an incident that occurred on September 6, 2005, in the home of one of his coworkers, Justin Gordon (“Justin”), and Justin’s girlfriend, Jennifer Pigg (“Jennifer”). All of the relevant events occurred in the Gordon home, which is within the Pearl city limits, Rankin County, Mississippi. Tammy[1] was the victim of the sexual assault; she was twenty-two years of age at that time. Abernathy was forty-three years of age at the time.
¶ 4. A trial was conducted on December 14, 2007, in the Circuit Court of Rankin County. At trial, the State called four witnesses in its case-in-chief: Detective Dewitt Seal of the City of Pearl Police Department (“Seal”), Jennifer, Justin, and the victim, Tammy.
¶ 5. Seal was the primary investigating officer involved in the case. He testified regarding the particulars of his investigation, specifically detailing the statements taken from Tammy, Jennifer, and Justin. Following Seal’s testimony, the State called Jennifer. At the time of the inei- *322 dent, Jennifer lived with her boyfriend Justin. Jennifer testified that she had worked for Custom Products Corporation of Flowood, where Justin and Abernathy both were employed. Justin and Abernathy were coworkers and friends at the time.
¶ 6. Jennifer testified regarding the events of the evening in question. At some time during the day, Jennifer had spoken with Tammy, and they had agreed that Tammy would spend the night at Jennifer’s home. Jennifer stated that, in the early afternoon, Justin had arrived home with beer, planning to have an evening cookout. Shortly thereafter, Abernathy arrived, bringing more beer. Abernathy had intentions of staying with Justin and Jennifer that evening, as he was without a permanent home at the time.
¶ 7. Jennifer testified that, shortly after Tammy arrived at Jennifer’s house that evening, she became ill and complained of a headache. Tammy then retired to the guest bedroom in the house. Jennifer further testified that she was aware that Tammy previously had suffered from migraines but, to her recollection, Tammy did not suffer from them often. Throughout the evening, Abernathy made several trips to the bedroom to “check” on Tammy. After several visits, Jennifer and Tammy instructed Abernathy not to return.
¶ 8. After Jennifer’s testimony, the court called a recess for lunch. During the break, Jamie McBride, attorney for the State, requested the trial court to invoke the rule[2] as to the exclusion of witnesses, and addressed the court regarding Dr. Howard Katz’s presence in the courtroom. The defense then indicated that it intended to call Dr. Katz later in the trial to testify as an expert concerning migraine headaches. The attorney for the defense made an ore tenus motion regarding the relevance of Dr. Katz’s testimony and discussed his reasons for calling him. After the defense’s explanation, the court responded:
Well, we’re not going to get through with this trial today. It’s going to go into tomorrow at this point. But, I’m not going to rule on that right now. I’ll do a Dauberthearing on it at the proper time. But we need to get the rest of the testimony in and then I’ll do the Daubert [3]hearing and ever how long it takes, it takes. We’re going to stay here until we get through with it. I don’t care if it’s Sunday.
¶ 9. Next, the State called Justin to testify. Justin testified regarding his friendship with Abernathy. He restated the facts previously offered by Jennifer. He also testified that, in the past, Tammy had used the term “migraine headache” in his presence. However, he testified that the night in question was the first time she had described her personal illness as a migraine headache.
*323 ¶ 10. Finally, the State called Tammy. She testified regarding her illness that evening. Tammy had been diagnosed in high school with having migraines by her personal physician, Dr. Roy B. Kellum.[4] She said that after Jennifer and Justin went to their bedroom on the evening in question, Abernathy entered the bedroom in which she was sleeping. Tammy testified that Abernathy had climbed on top of her, at which point she told him to “stop” and “get off.” Tammy recalled that Abernathy told her not to scream. She further testified that Abernathy pulled down her shorts and panties, spread her legs apart and placed his finger into her vagina. In addition, Tammy stated that Abernathy had inappropriately touched her on several parts of her body. Finally, Tammy testified that she was pregnant at the time of the incident but did not discover her pregnancy until after the incident occurred. The State rested after Tammy’s testimony.
¶ 11. At the close of the State’s case-in-chief, the court asked the defense again for its reasoning in calling Dr. Katz. Attorney Pat Frascogna responded:
Your Honor, the victim in this case, just a few moments ago, said that she has been diagnosed since high school, with a migraine headache condition of some sort. She has suffered from those since that age, since high school age. Dr. Katz is here to not — -not to offer any kind of conclusion or expert opinion on what David Abernathy may or may not have been involved in at that house that evening, but merely to describe for the jury the migraine headache and what it means as far as its affect [sic] or possible effects on suffering and such.
[[Image here]]
Your Honor, the migraine — the migraine headaches, and this is what Dr. Katz will show, migraine headaches are responsible for a wide variety of, let’s say mis-perceived, misperceived [sic] events in one’s life while they’re having such. In other words, the sufferer of a migraine headache may perceive something about their environment that is not actually there, which is not part of that environment, and testimony today would be merely to give case history an example of that and nothing more.
¶ 12. After further discussion with both attorneys, the Court responded:
Okay. Normally, you hold a Daubert ... hearing to determine whether or not the evidence, testimony offered is — and whoever came up with the term, I don’t particularly like it, but they want the courts to be the gate keeper to determine if it’s junk [science]. I don’t believe for one minute that what Dr. Katz would testify to would be junk [science]. But because we all know migraine headache exists, there are different causes for them, and people react to them and in different ways.
That being said, my observation at this point is this that, (1) I hadn’t heard any testimony that — of a medical nature that would classify this headache this lady had as a migraine headache. There’s no medical testimony to that. She said she had a headache. She said that it — she used the term migraine to describe it. But other than her saying that, I don’t know that it’s a migraine. There’s been no testimony to indicate that this lady has ever suffered from any hallucinations with or without a headache. We don’t know the severity of the degree of *324 the headache. There’s no evidence about that.
Unless I’m told otherwise, I’m not sure that Dr. Katz knows what the medical history of this victim is, if it’s ever been reviewed by him. I don’t know whether or not he’s ever examined this victim. Medications taken. The witness is not even sure what medication she’s taken, whether — or what it was, so we don’t know how that would affect this headache.
If Dr. Katz is going to testify as to generally the case histories and generally to how migraine affects people, that doesn’t mean that it affects this woman that way. It might. It might not. Unless you can come up with something to tie his testimony to this witness, it’s not relevant as far as I’m concerned and I’m deciding it on a relevancy issue and not on a medical issue.
So with that, seat the jury and call your first witness. If you think you can get it to that point, that’s you know, I’ll reconsider it. But at this point, I don’t see how.
MR. FERRELL: Your Honor, I’m Wayne Ferrell and I’m here representing Dr. Katz when we — when it was announced that there would be a Dau-bert hearing. I’m here to represent him individually as far as his qualifications and, you know, being disqualified on what — on his expertise. That’s the reason I’m here in the courtroom.
THE COURT: Okay. Well, right now it’s not relevant and we’re not even getting over into that boat.
¶ 13. At the close of the discussion, Judge Richardson denied Abernathy’s motion for directed verdict. The defense then began its case-in-chief with the testimony of Sandra Newman. Next, the defense called Abernathy. Abernathy’s testimony consisted of his recollection of the night in question. Abernathy testified that Tammy had complained of headaches throughout the evening and even had vomited at one point in the night. Abernathy had assisted Tammy outside with a wet washcloth, and then she retired to bed almost immediately thereafter. Abernathy testified that he did enter her room at one point and sit on the side of the bed where Tammy was sleeping. He claims that he did not disturb her by pulling back the covers and that he did not disrobe her.
¶ 14. After Abernathy’s testimony the court asked the defense to call its next witness. The following exchange occurred:
THE COURT: Who would you have next for the Defendant?
MR. FRASCOGNA: That’s all, your Honor.
THE COURT: Does the Defendant rest?
MR. FRASCOGNA: Yes, sir.
¶ 15. After the defense rested, the State called Justin Gordon as a rebuttal witness. At the close of his testimony, the State finally rested. At that time, the judge delivered instructions to the jury and charged it with its duty. After closing arguments, the judge dismissed the jury for deliberation. Once the jury retired, the trial court offered one last statement regarding Dr. Katz’s testimony:
The jury is out. On the record just a moment. There was another issue, or not issue, but I wanted to have something else included in the record on my ruling on the — on Dr. Katz’s testimony I forgot to put in there earlier.
[Tammy] testified that she threw up. Tammy testified that she discovered she was six weeks pregnant, and I think that the Court can probably take judicial notice of the fact that when you’re pregnant, you throw up, or most, I’d say 99 *325 percent of the women do and it is not necessarily in the morning, and that’s, I know, also an indicator, that throwing up is an indicator of a migraine headache. It’s also an indication of being pregnant. Okay.
¶ 16. The jury returned a verdict of guilty as charged in the indictment. Abernathy subsequently was sentenced to serve a term of thirty years in the custody of the Mississippi Department of Corrections with twenty years suspended and a period of five years on supervised probation upon release from incarceration.
¶ 17. After the trial, Abernathy moved for judgment of acquittal notwithstanding the verdict. Counsel for the defense argued that there was no specific finding regarding Dr. Katz’s testimony and that there was no specific finding regarding the reliability of the opinions that Dr. Katz would have provided. Judge Richardson summarily denied the motion.

ANALYSIS

I. Whether the trial court erred in excluding the expert testimony of Dr. Katz.
¶ 18. “[T]he admission of expert testimony is -within the sound discretion of the trial judge.” Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (Miss.2003) (citing Puckett v. State, 737 So.2d 322, 342 (Miss.1999)). “Therefore, the decision of the trial judge will stand ‘unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.’ ” Id.
¶ 19. The basis of Abernathy’s appeal centers around the fact that Dr. Katz did not testify at trial. Specifically, Abernathy avers that the trial court erred because it determined Dr. Katz’s testimony to be irrelevant, and, therefore, excluded said testimony. “This Court has repeatedly held that when testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal.” Murray v. State, 849 So.2d 1281, 1289 (Miss.2003). The Official Comment to Rule 103 of the Mississippi Rules of Evidence states that “... when a party objects to the exclusion of evidence, he must make an offer of proof to the court, noting on the record for the benefit of the appellate court what evidence the trial judge excluded.” Vaughan v. State, 759 So.2d 1092, 1105 (Miss.1999) (Smith, J., specially concurring); see also King v. State, 374 So.2d 808 (Miss.1979); Brown v. State, 338 So.2d 1008 (Miss.1976).
¶ 20. It is evident from the trial transcript that the defense failed to make a sufficient proffer after the trial court excluded Dr. Katz’s testimony. Although the defense mentioned Dr. Katz prior to trial and discussed Dr. Katz’s proposed testimony during trial, the defense did not effect a sufficient proffer. See ¶¶ 11-12, supra, for the trial excerpts containing said discussion. Even finding that the testimony of Dr. Katz would have been relevant, the record is insufficient for us to determine whether it could have survived under the Mississippi Rule of Evidence 403 balancing test for admissibility.[5] It is incumbent upon the proponent of evidence to make an adequate record of the proposed testimony which this Court can review. This was not done in this case; without such we are unable to find that the trial court erred.
*326 ¶ 21. Accordingly, we find that the record lacks the necessary information to make a determination concerning the admissibility of the evidence, even if found to be relevant. Likewise, the lack of a sufficient proffer renders this Court unable to hold the trial judge in error. Therefore, the conviction and sentence of David Abernathy are hereby affirmed.
II. Whether the evidence was insufficient to support the verdict.
¶ 22. Additionally, Abernathy avers on appeal that the evidence presented at trial was insufficient to support the verdict. The critical inquiry when considering the sufficiency of the evidence is to decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Morris v. State, 927 So.2d 744, 748 (Miss.2006) (citing Bush v. State, 895 So.2d 836, 843 (Miss.2005)). In the instant case, there was testimony that Abernathy did commit sexual assault upon Tammy. The case largely consisted of the victim’s word against the defendant’s. This presents a factual dispute to be resolved by a jury. We cannot conclude that any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt, when the evidence is viewed in the light most favorable to the State. Accordingly, this assignment of error is without merit.
CONCLUSION
¶ 23. Because Abernathy failed to make a sufficient proffer concerning Dr. Katz’s testimony, this Court finds that Abernathy failed to preserve the issue of Dr. Katz’s testimony for appeal. Accordingly, the trial court’s ruling denying Abernathy’s Motion for Judgment of Acquittal Notwithstanding the Verdict and Motion for New Trial is hereby affirmed, as is the conviction and sentence.
¶ 24. CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. THE LAST TWENTY (20) YEARS OF THE SENTENCE ARE HEREBY STAYED AND THAT PORTION OF THE SENTENCE IS SUSPENDED. UPON RELEASE, THE APPELLANT SHALL BE PLACED ON SUPERVISED PROBATION UNDER THE DIRECT SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR FIVE (5) YEARS.
CARLSON, P.J., DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., KITCHENS AND CHANDLER, JJ.

. "Tammy” is a pseudonym used by this Court to protect the victim's identity.

. Rule 615 of the Mississippi Rules of Evidence provides that at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. Jamie McBride, attorney for the State, simply invoked this rule.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (holding general acceptance is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, and that the Rules assign trial judges the task of ensuring that expert's testimony both rests on a reliable foundation and is relevant to the task at hand). Usually, a Daubert hearing is held prior to trial or during trial regarding the reliability and relevance of a party's expert witness.

. It should be noted that Tammy used the words "migraine” and “headache” interchangeably throughout her testimony.

. Rule 403 of the Mississippi Rules of Evidence allows for relevant evidence to be excluded "... if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Miss. R. Evid. 403.