# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-00822-SCT

*EARNEST MAYFIELD a/k/a ERNEST MAYFIELD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/2024 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF, III |
| TRIAL COURT ATTORNEYS: | MEGAN ASHLEY ROGERS-HASIE |
| | KATHRYN WHITE NEWMAN |
| | VICKI L. GILLIAM |
| | GRETA D. MACK HARRIS |
| | TAMEIKA LADANYA BENNETT |
| | JOHN K. BRAMLETT, JR. |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/06/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., CHAMBERLIN AND BRANNING, JJ.**

**BRANNING, JUSTICE, FOR THE COURT:**

¶1.     Earnest Mayfield was found guilty of one count of sexual battery and was sentenced to thirty years' incarceration as a habitual offender. Mayfield now appeals his conviction and sentence, arguing that: (1) the State failed to present sufficient evidence to prove his guilt

beyond a reasonable doubt; and (2) the circuit court erred by denying his motion for a new trial or judgment notwithstanding the verdict. Finding no error, we affirm on both issues.

## FACTS AND PROCEDURAL HISTORY

¶2. Jane Doe[1] worked at the dental clinic at the Central Mississippi Correctional Facility in Rankin County. Because the doorknob on the inside of Doe's office door was missing and someone previously had been locked inside, she would routinely leave the door open. Doe testified that on September 17, 2021, while sitting in her office with her back to the open door, she suddenly felt a hand "reach behind [her] and grab [her] bottom." She then jumped up and tried to leave, but an inmate, later identified as Mayfield, shut the office door, locking them both inside the office.

¶3. Doe further testified that she was "about to scream," but Mayfield "put his hand on [her] throat" and told her not to say anything. Doe testified that Mayfield "pushed [her] down, ripped [her] pants off, and ripped [her] underwear off with them," spit on his hand, touched his penis, and then put his penis inside her vagina. Doe testified that Mayfield only stopped after he ejaculated inside of her. Mayfield tried to leave the office but was unaware that the door was broken. After Doe told him the door was broken, Mayfield repeatedly stated to her, "Damn. I f***ed up. Damn. I f***ed up." Mayfield asked Doe what she was going to tell her coworkers when they came in the office, and Doe responded saying, "I'm not going to say anything." Doe testified that the whole time she was praying for "somebody to come open this door," but no one ever came. She did not have a phone in the office to call

---

[1] In this opinion, we use the fictitious name of Jane Doe to refer to the adult female victim.

anyone to open the door. Doe testified that she sent an email to three of her coworkers asking them to open the door because she was locked in, but no one responded.

¶4.     Eventually, an officer opened the door. Once the door was open, Doe rant to her supervisor Carmella Davis's office. Doe testified that once in her supervisor's office, she "couldn't talk," and she was "crying and shaking." Davis asked Doe, "What happened? Did somebody touch you?" Doe testified that she "shook [her] head yes" and then Davis asked if it was an inmate. Doe "shook her head yes" again. Davis testified that Doe was "shaking" and in obvious "distress." Davis also noted that during the time that Doe worked in the office, she had never seen her in such a state of emotional distress. Doe was taken to the hospital by ambulance for a rape kit. During the sexual-assault examination, Doe told the nurse that Mayfield "choked [her] to keep [her] quiet during [the] assault" but left no bruises on Doe's neck. The nurse noted that during the examination, there was an "overwhelming smell of semen." The nurse also saw "white and clear fluid" on Doe and inside her underwear. Doe testified that she had engaged in consensual intercourse the day before with her boyfriend. The nurse obtained vaginal and vulvar swabs from Doe. DNA testing showed the presence of sperm from two contributors in both vulvar and vaginal swabs. The dominant profiles from the vulvar and vaginal swabs came from Mayfield. Testing also showed a "minor profile from an unknown male"—likely Doe's boyfriend. Doe also testified that she was dating her boyfriend and was sexually active with him in September 2021.

¶5.     When asked how she identified Mayfield, Doe testified that the inmate was wearing a button-up jumpsuit and that he had tattoos on his chest. Doe testified that Mayfield was the person who assaulted her after being shown a picture of Mayfield with his shirt off. The State

3

introduced pictures of Mayfield with his shirt off along with the emails that Doe sent to her coworkers asking them to come open the door to her office. Doe also identified Mayfield in court as the man who assaulted her.

¶6.     Mayfield did not testify at trial but submitted to an interview by Investigator William Carter, the transcript of which was admitted into evidence at trial. In his statement, Mayfield provided a different version of events from that day. Mayfield stated that he knew Doe "from the free world" and that they had previously communicated through Facebook. Mayfield further stated that while at the dental facility on September 17, 2021, he asked to use the restroom when he saw Doe standing in the doorway. According to Mayfield, Doe invited him into the "area room" where they started hugging. He stated that Doe pulled down her pants and as he pulled out his penis to try to get an erection, he ejaculated everywhere including on Doe's naked body. He further stated that when he shut the door, Doe became worried that they might get caught; she then began sending emails to get someone to open the door. Mayfield's primary defense was that Doe consented to the sexual encounter.

¶7.     Doe testified, however, that she had never met, seen, or talked to Mayfield before September 17, 2021. Subsequently, Doe denied ever speaking to Mayfield through Facebook. Doe acknowledged that she had Instagram, Facebook, and Snapchat accounts and that her Facebook account was listed under an alias. She testified that she was aware that she would be fired if she had a sexual relationship with an inmate. Additionally, Investigator Carter testified that Mayfield's cell phone contained "no evidence" showing that Mayfield and Doe had ever spoken before that day. No other evidence was presented to prove a prior relationship between the two.

4

¶8.    Investigator Carter testified that after interviewing Mayfield, he decided to present the case to a grand jury, which returned an indictment of sexual battery. After trial, the jury returned a verdict finding Mayfield guilty of sexual battery.  The trial court sentenced Mayfield to thirty years in the custody of the Mississippi Department of Corrections. After the trial court denied Mayfield's motion for a new trial or judgment notwithstanding the verdict, Mayfield appealed.

## STANDARD OF REVIEW

¶9.    "Challenges to the sufficiency of the evidence (raised by motions for directed verdict and for JNOV) and challenges to the weight of the evidence (raised by motions for a new trial) raise similar issues." *Cousar v. State*, 855 So. 2d 993, 998 (Miss. 2003). When considering a trial court's decision on the legal sufficiency of the evidence presented against a defendant at trial, this Court applies a de novo review. *Buchanan v. State*, 316 So. 3d 619, 630 (Miss. 2021) (quoting *Haynes v. State*, 250 So. 3d 1241, 1244 (Miss. 2018)). This Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Abernathy v. State*, 30 So. 3d 320, 326 (Miss. 2010) (citing *Morris v. State*, 927 So. 2d 744, 748 (Miss. 2006)).  Mere conjecture or speculation fails to meet this burden; rather, it must be satisfied through evidence. *Buchanan*, 316 So. 3d at 630 (citing *Edwards v. State*, 469 So. 2d 68, 69-70 (Miss. 1985)).

¶10.   Conversely, our appellate courts apply an abuse-of-discretion standard of review when determining the propriety of a trial court's decision to deny a motion for a new trial. *Hawkins v. State*, 410 So. 3d 462, 468 (Miss. 2025) (quoting *Haymon v. State*, 346 So. 3d

5

875, 883 (Miss. 2022)). A jury's verdict will be overturned "only when it is so contrary to the evidence presented that to let it stand would sanction an unconscionable injustice." *Id.* (internal quotation marks omitted) (quoting *Haymon*, 346 So. 3d at 883).

## DISCUSSION

### I. *Sufficiency of the Evidence*

¶11. Mississippi Code Section 97-3-95(1)(a) (Rev. 2020) provides that a person commits sexual battery by engaging "in sexual penetration with . . . [a]nother person without his or her consent[.]" The State was required to prove beyond a reasonable doubt that Mayfield penetrated Doe without her consent. After considering all evidence presented, the jury found Doe's testimony to be credible and further found that the State met its burden.

¶12. On appeal, Mayfield first argues that the State failed to produce sufficient evidence to prove beyond a reasonable doubt that his sexual intercourse with Doe was not consensual. Mayfield argues that because Doe did not directly testify that her encounter with him was not consensual, the State did not meet its burden. But it is not reversible error that she failed to explicitly testify as to her lack of consent at trial. *See Hull v. State*, 687 So. 2d 708, 723 (Miss. 1996). Whether or not Doe consented was for the jury to determine based on the evidence presented to them. *Ferguson v. State*, 293 So. 2d 445, 446 (Miss. 1974).

¶13. Doe testified that she told Mayfield that he "didn't have to do this." Before Doe could scream, Mayfield put his hand around her throat and over her mouth to keep her quiet. Doe testified that she felt "disgusted, like [her] life was in danger." And she testified that "[she] needed to cooperate because [she] was locked in there." Doe also testified that she was afraid that if she fought back, it would make the situation worse. Once Doe managed to get

6

away, she immediately reported what had happened to her and sought medical attention. Her supervisor stated Doe was "shaking and trembling" after the encounter with Mayfield. When asked, "Did somebody touch you?" Doe shook her head affirmatively.

¶14.  This Court has held that "[t]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence[.]" *Wilkins v. State*, 1 So. 3d 850, 853 (Miss. 2008) (quoting *Ladnier v. State*, 878 So. 2d 925, 931 (Miss. 2004)).  Here, no credible evidence discredited or contradicted Doe's testimony.  *See id.* at 854.

¶15.  Additionally, Mayfield argues that the encounter was consensual because there was no evidence of any visible injuries to Doe's neck nor did the rape kit show any tearing to her vagina. But this Court has found that the absence of physical evidence alone will not suffice to overturn a conviction.  *Blanchard v. State*, 55 So. 3d 1074, 1079 (Miss. 2011) (citing *Moore v. State*, 933 So. 2d 910, 922-23 (Miss. 2006).  We find that the evidence presented by the State sufficiently supported the guilty verdict and, accordingly, we affirm.

## II.     *Weight of the Evidence*

¶16.  Alternatively, Mayfield argues that the verdict was against the overwhelming weight of the evidence. When reviewing a claim that the verdict was against the overwhelming weight of the evidence, this Court should "view the evidence in the light most favorable to the verdict[.]" *Little v. State*, 233 So. 3d 288, 289 (Miss. 2017). The Court should not disturb the jury's verdict unless "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.*  On review, the Court should not reweigh the evidence, assess witness credibility, or resolve conflicting evidence

7

as these are the jury's responsibilities. *Id.* This Court has previously held that "[t]he jury determines the weight and credibility to give witness testimony and other evidence." *Moore*, 933 So. 2d at 922 (citing *Johnson v. State*, 904 So. 2d 162, 167 (Miss. 2005)). If the evidence justifies a verdict, we must accept it "as having been found worthy of belief." *Id.* (internal quotation mark omitted) (quoting *Davis v. State*, 568 So. 2d 277, 281 (Miss. 1990)).

¶17. In *Weeks v. State*, 123 So. 3d 373, 380 (Miss. 2013), this Court upheld a conviction and sentence for the defendant's sexual battery of his fourteen-year-old daughter. The evidence presented included a positive rape kit and DNA analysis, the victim's testimony, as well as the testimony of the investigator who observed the forensic interview and who opined that the victim's response was consistent with that of a rape victim. *Id.* at 374-76. After hearing the evidence, the jury returned a guilty verdict based on the evidence presented. *Id.* at 376. On appeal, this Court upheld the conviction and specifically noted that the forensic evidence, coupled with the victim's testimony found to be credible by the jury, was sufficient and of adequate weight to uphold the conviction. *Id.* at 379-80.

¶18. In the present case, the jury heard Doe's testimony regarding her account of the sexual assault and found her testimony to be credible. Additionally, the jury heard testimony from Doe's boss, who saw her demeanor immediately following the incident, along with testimony of the analyst for the rape kit. When considered in the light most favorable to the verdict and in concert with the testimony offered at trial, we find that the verdict is not against the overwhelming weight of the evidence. Therefore, we find this issue to be without merit.

8

## CONCLUSION

¶19.    We affirm the judgment of conviction and the sentence, as well as the trial court's

denial of Mayfield's motion for a new trial.

¶20.    **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS AND SULLIVAN, JJ., CONCUR.**