MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Shawn Lawan McLaurin was indicted by a Hinds County grand jury for the rape of L.E. pursuant to Mississippi Code
 
 *1265
 
 Annotated section 97-3-65 (Rev.2006). He was tried and convicted of rape by a jury in the Hinds County Circuit Court. The trial court sentenced him to serve life in the custody of the Mississippi Department of Corrections [MDOC]. Aggrieved by his conviction and sentence, McLaurin appeals arguing that: (1) he received ineffective assistance of counsel; (2) the trial court erred in denying McLaurin to cross-examine the victim about his alleged gunshot wound; (3) the trial court erred in overruling McLaurin’s objection to a comment made by the prosecutor; (4) McLaurin was prejudiced by the trial court’s failure to conduct a balancing test as to evidence regarding McLaurin’s prior criminal acts; (5) the photographic lineup procedures were so suggestive as to unconstitutionally taint the identification of McLaurin; and (6) cumulative error warrants reversal. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. In 1997, L.E. knew the defendant, McLaurin, as Brian McDaniels. The two had been friendly acquaintances for approximately three years. L.E. testified that she had met McLaurin through a friend of McLaurin’s, who was dating L.E.’s cousin.
 

 ¶ 3. L.E. testified that on January 16, 1997, she placed a call to McLaurin from her dormitory room at Tougaloo College. The two agreed that McLaurin would pick up L.E. that night at her dormitory. At approximately 7:30 that night, McLaurin picked up L.E. at her dormitory in a black Mazda pickup truck with an “outlaw” sticker on its back window.
 

 ¶4. L.E. testified that while they were out McLaurin told her that he needed to stop at his sister’s house. The two pulled up to a white house and entered the house with a key that McLaurin had on his person. After entering the house, the two went to the back bedroom where they began watching television. After watching television for approximately thirty minutes, McLaurin turned to L.E. and suggested that they have sex. She recalled seeing a condom in McLaurin’s hand. L.E. denied McLaurin’s suggestion and requested that he take her back to her dormitory room. She said McLaurin then became aggressive and insisted that they have sex. L.E. attempted to leave the bedroom, but McLaurin blocked the doorway. McLaurin then walked out of the bedroom, and according to L.E., he returned with either a shotgun or a rifle. He pointed the gun at her and told her to strip off her clothes. Fearful for her life, L.E. complied with McLaurin’s demands and removed her clothing. L.E. testified that McLaurin blindfolded her and handcuffed her to the bed, and he then raped her.
 

 ¶ 5. Shortly after the rape occurred, L.E. heard a car pull up to the house. McLaurin uncuffed L.E., told her to clothe herself, and instructed her not to say anything. The two exited the house and got back into McLaurin’s truck. McLaurin placed the blindfold back on L.E. and began driving around telling her he was going to kill her. A short time later, McLau-rin pulled over on a street near Touglaoo and pulled out a small handgun. He told L.E. that he was going to be watching her, and that if she told anyone what had occurred, he would kill her. L.E. went back to her dormitory and informed her roommate about what occurred. L.E. was then taken to the hospital.
 

 ¶ 6. Dr. George Ellis was working the emergency room when L.E. was brought to the hospital. He testified that the ex-
 
 *1266
 
 animation revealed no semen and no indication of an assault. He testified that no semen would likely have been found if the perpetrator had used a condom, which L.E. testified McLaurin used while raping her. On cross-examination, Dr. Ellis was asked whether his examination of L.E. revealed forcible entry. Dr. Ellis said he could not say that the physical examination proved it. On redirect, the State asked Dr. Ellis if there was anything about the examination that disproved L.E. was raped. Dr. Ellis said, “Nothing disproves it.”
 

 ¶ 7. L.E. gave a statement to the police that night at the hospital and again a couple of days later. At that time, as indicated by the record, the police, together with L.E., attempted to find the house where the raped had occurred and to locate the individual L.E. knew as Brian McDaniels, but they were unsuccessful.
 

 ¶ 8. In June 1998, while at a nightclub with her cousin, L.E. spotted McLaurin. She reported this to an off-duty police officer who was working security for the nightclub. McLaurin was then arrested. A few days after the arrest, L.E. was shown a photographic lineup; she selected McLaurin as the perpetrator.
 

 ¶ 9. Velma Johnson with the Jackson Police Department testified that L.E. eventually identified McLaurin’s mother’s house as the house where the rape had occurred.
 

 ¶ 10. Norris Jernigan, the off-duty police officer who was at the nightclub when McLaurin was arrested, testified that when he made the arrest, McLaurin told him his name was Brian McDaniels.
 

 ¶ 11. During the defense’s case-in-chief, Rechelle Williams, the mother of McLau-rin’s children, McLaurin’s sister, and McLaurin’s mother all testified that McLaurin was with Williams on the night of the rape. They each told a similar story that McLaurin and Williams were at his mother’s house on the night of the rape, and they left only to visit his sister. McLaurin did not testify.
 

 ¶ 12. James Chappell, a parole officer, testified for the State as a rebuttal witness. He told the jury that Williams had contacted him and stated that McLaurin had been threatening and harassing her. Chappell stated that McLaurin was trying to get Williams to lie at his trial and to state that they were together on the night of the rape.
 

 ¶ 13. The jury found McLaurin guilty of rape. The trial court sentenced him to serve a term of life in the custody of MDOC. McLaurin thereafter filed a motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial, which the trial court denied. The supreme court allowed McLaurin to file an out-of time appeal alleging six assignments of error.
 

 DISCUSSION
 

 I. Ineffective Assistance of Counsel
 

 ¶ 14. McLaurin raises twenty-three allegations of ineffective assistance of counsel. Without exhaustively listing each of McLaurin’s assertions, we summarize his allegations using his own words: “defense counsel did little to avail himself of the evidence in the custody of the State, ... much less conduct an independent investigation.”
 

 ¶ 15. Mississippi Rule
 
 of
 
 Appellate Procedure 22(b) states:
 

 Issues which may be raised in post-conviction proceedings may also be
 
 *1267
 
 raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.
 

 ¶ 16. “Where the record is insufficient to support a claim of ineffective assistance, ‘the appropriate conclusion is to deny relief, preserving the defendant’s right to argue the same issue through a petition for post-conviction relief.’ ”
 
 Wynn v. State,
 
 964 So.2d 1196, 1200(¶ 9) (Miss.Ct.App.2007) (citing
 
 Aguilar v. State,
 
 847 So.2d 871, 878(¶ 17) (Miss.Ct.App.2002)).
 

 ¶ 17. Several of McLaurin’s allegations are based upon facts that are not fully apparent from the record: defense counsel failed to file a direct appeal or a motion for post-conviction relief after accepting a retainer and asserting the defense he was going to file the appeals; defense counsel did not review an incriminating photograph of McLaurin used at trial and did not file a motion to exclude the photograph; defense counsel failed to sufficiently investigate potential witnesses and relevant medical records; and defense counsel did not submit any jury instructions. The record contains no medical records, nor does it contain any statements by potential witnesses. Thus, we cannot address these issues on direct appeal. Because we cannot address several of McLaurin ineffective assistance of counsel allegations on direct appeal, we find that McLaurin’s ineffective assistance claim would be more appropriately brought in a petition for post-conviction relief, if he chooses to do so. Accordingly, we deny relief on this issue without prejudice.
 

 II. Opportunity to Cross-examine
 

 ¶ 18. McLaurin argues that by the trial court’s refusal to allow him to cross-examine L.E. regarding a gunshot wound that he allegedly had on his leg at the time of rape denied him his constitutional right to confront a witness. “We review the trial judge’s limiting of cross-examination under an abuse of discretion standard.”
 
 Hampton v. State,
 
 966 So.2d 863, 867(¶ 15) (Miss.Ct.App.2007) (citing
 
 Jefferson v. State,
 
 818 So.2d 1099, 1109(¶ 24) (Miss.2002)).
 

 ¶ 19. McLaurin’s theory of the case was that this was an instance of mistaken identity, and that on night of the rape, he was recovering from a gunshot wound to the upper thigh. Yet, there was no mention of these wounds in the initial police reports. According to the witnesses called on McLaurin’s behalf during the defense’s case-in-chief, McLaurin was using crutches to walk around at the time the alleged rape occurred, could not drive his standard-shift pickup truck, and had a wound on his upper thigh that would have been clearly visible. McLaurin argues that when his defense counsel attempted to ask L.E. about these wounds, the trial court prohibited his inquiry.
 

 ¶ 20. We disagree. L.E. was the first witness called by the prosecution. On cross-examination, the following exchange occurred between L.E. and defense counsel:
 

 Q: Okay. Was there anything unusual about him at that point?
 

 A: During that night?
 

 Q: Well, during that time anything unusual about his person or anything like that?
 

 A: No, there wasn’t.
 

 
 *1268
 
 Q: Okay. So if he was shot in the right leg with a .38 caliber pistol and under a doctor’s care, you would [have] know[n] that. You wouldn’t have .the opportunity to have seen that?
 

 A: At that time I didn’t realize anything like that, no.
 

 Q: Okay. Did that come up in conversation that [he] had been shot in November of '96 and was finally released from the doctor’s care on 12-21-96, about two weeks before the event?
 

 ¶ 21. The State objected to this question on the ground that there was no evidence or documentation entered regarding McLaurin being under a doctor’s care for a gunshot wound during this time period. The trial court sustained the objection.
 

 ¶ 22. We find that the trial court did not abuse its discretion in sustaining the objection because there was no evidence yet submitted to show that McLaurin was under a doctor’s care for the alleged leg injury.
 
 See Vickers v. State,
 
 994 So.2d 200, 221(¶ 82) (Miss.Ct.App.2008) (upholding the trial court’s refusal to allow the defendant to question the witness when the question assumed facts not in evidence).
 

 ¶ 23. Further, Rule 611(a) of the Mississippi Rules of Evidence provides the trial court the discretion necessary “to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence.” Rule 611(b) of the Mississippi Rules of Evidence, indeed, permits wide-open cross-examination. M.R.E. 611 cmt. But, the comment to the rule also states that “under Rule 611(a) the judge may still limit cross-examination to serve one of the purposes therein stated.”
 
 Id.
 
 One such purpose is to prevent the needless waste of time. M.R.E. 611(a).
 

 ¶ 24. Despite McLaurin’s argument to the contrary, the record clearly reveals that L.E. let it be known to the jury that she did not notice a gunshot wound to McLaurin’s leg. This argument is without merit.
 

 III. Prosecutor’s Comments
 

 ¶ 25. McLaurin argues that the prosecutor made improper and unconstitutional comments on McLaurin’s failure to call a medical witness regarding his alleged gunshot wound. While cross-examining McLaurin’s mother, the prosecutor asked several questions about who had treated McLaurin for his alleged gunshot wound and why the defense did not call the treating doctor as a witness. During closing arguments, the prosecutor made another comment about McLaurin’s failure to call his treating doctor for his gunshot wound as a witness. McLaurin argues these comments violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
 

 ¶ 26. McLaurin cites to
 
 Brown v. State,
 
 200 Miss. 881, 887, 27 So.2d 838, 840 (1946), for the proposition that it is generally improper for the prosecution to comment on the failure of the defendant to call a witness equally accessible to both parties. Based on the record in this case, however, McLaurin’s reliance on
 
 Brown
 
 is misplaced. In
 
 Ross v. State,
 
 603 So.2d 857, 864 (Miss.1992), the supreme court explained the
 
 Brown
 
 rule as follows:
 

 The concept of “equal” accessibility constitutes a crucial concept in applying this rule. In the 1946
 
 Brown
 
 case, this Court held that the rule barring comment did not apply where a witness, while technically accessible to both par
 
 *1269
 
 ties, stood more available to the complaining party.
 
 Brown,
 
 200 Miss, at 888-89, 27 So.2d at 841. Where a defendant fails to call a witness more available to him and presumptively in a closer relationship with him, the [S]tate is fully entitled to comment on the party’s failure to call the witness.
 
 Id.
 

 ¶ 27. Through his alibi witnesses, McLaurin attempted to contradict the State’s ease with testimony that McLaurin was on crutches at the time of the alleged rape due to a recent gunshot wound to his leg; therefore, he could not have been the perpetrator. Both Williams and Margaret, the defendant’s mother, mentioned in their testimonies that McLaurin was under a doctor’s care for the injury. During cross-examination, the State asked Margaret who was McLaurin’s treating physician. The witness responded that she believed it was a “Dr. Fisher,” but added that she was not sure.
 

 ¶ 28. There is no indication anywhere in the record that the State was informed prior to trial that McLaurin was being treated for a gunshot wound at the time of alleged incident, much less, by whom. Pursuant to the
 
 Brown
 
 rule, the State properly queried Margaret on cross-examination on this point, and during its summation, the State appropriately argued the logical inference taken from the defendant’s failure to produce his treating physician at trial. This issue is without merit.
 

 IY. Prior Bad Acts
 

 ¶29. McLaurin argues the trial court erred by not sua sponte conducting a Mississippi Rule of Evidence 403 balancing test on testimony regarding McLaurin’s prior bad acts. Officer Richard Lowery, with the Jackson Police Department, testified that he had seen McLaurin’s pickup truck with the “outlaw” sticker on its back window during his investigation of another criminal matter. Lowery testified that, when the truck was impounded following McLaurin’s arrest at the night club, a rifle and a handgun were found inside the vehicle. McLaurin claims the trial court should have conducted a hearing to determine whether the probative value of this evidence outweighed its prejudice.
 

 ¶ 30. However, McLaurin’s counsel admittedly did not object to this testimony. Our supreme court has consistently held that the failure to make a contemporaneous objection to testimony which a defendant finds objectionable constitutes waiver of the issue on appeal.
 
 Wells v. State,
 
 698 So.2d 497, 514 (Miss.1997) (citations omitted). The reason for the rule is to allow the trial court to correct an error Avith proper instructions to the jury whenever possible.
 
 Morris v. State,
 
 963 So.2d 1170, 1177(¶ 26) (Miss.Ct.App.2007) (citing
 
 Gray v. State,
 
 487 So.2d 1304, 1312 (Miss.1986)). Procedural rule notwithstanding, the law does not require the trial court to conduct a Rule 403 balancing test sua sponte.
 
 Cf. Brown v. State,
 
 890 So.2d 901, 913(¶ 36) (Miss.2004) (supreme court expressly overruled
 
 Smith v. State,
 
 656 So.2d 95, 100 (Miss.1995), which had held that the trial court was required to issue a sua sponte 404(b) limiting instruction). The
 
 Brown
 
 court held that Mississippi Rule of Evidence 105 clearly places the burden of requesting a Mississippi Rule of Evidence 404(b) limiting instruction upon counsel. The
 
 Brovm
 
 court reasoned as follows:
 

 “The trial court has the discretion to determine if the Rule 404(b) limiting instruction is appropriate given the totality of the circumstances. Otherwise, it is fundamentally unfair to place the
 
 *1270
 
 burden on the trial judge absent an affirmative request on behalf of a party that such an instruction be given. Simply because the judge did not issue the instruction is not a reason for a mistrial; accordingly, there was no error in the trial below.”
 

 Brown,
 
 890 So.2d at 913(¶ 37).
 

 ¶ 31. We read
 
 Brown’s,
 
 holding as placing the onus on the parties to make a request unto the trial court that a Rule 403 balancing test be conducted with regard to relevant evidence which may otherwise be excluded for the reasons stated within the rule. Accordingly, this argument is without merit.
 

 V. Lineup
 

 ¶ 32. McLaurin argues that the photographic lineup given to L.E. was “im-permissibly suggestive as to taint” the identification of McLaurin. McLaurin claims the photographic lineup was suggestive because L.E. had seen him at the nightclub two days before the lineup was administered, which made the image of his face fresh in her memory during the photographic lineup. He also claims that the photographs in the lineup were “substantially dissimilar” from McLaurin, making McLaurin’s photograph stand out from the others.
 

 ¶ 33. We cannot determine the merit of McLaurin’s claim as the photographic lineup has not been made part of the record on this appeal. Our supreme court had stated that “we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot, know them.”
 
 Mason v. State,
 
 440 So.2d 318, 319 (Miss.1983). Accordingly, we cannot address this issue as McLaurin failed to make the photographic lineup part of the record.
 

 VI. Cumulative Error
 

 ¶ 34. McLaurin argues that the trial court’s error and the prosecution’s misconduct resulted in a cumulative error that requires reversal and a new trial.
 

 ¶ 35. “This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal.... However, where ‘there was no reversible error in any part, there is no reversible error to the whole.’ ”
 
 Bright v. State,
 
 894 So.2d 590, 596(¶ 31) (Miss.Ct.App.2004) (quoting
 
 Coleman v. State,
 
 697 So.2d 777, 787 (Miss.1997)). Since McLaurin has failed to show any individual errors, we find no cumulative error that would necessitate reversal of his conviction. Accordingly, this issue is without merit.
 

 ¶ 36. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF RAPE AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.