BARNES, J.,
for the Court:
¶ 1. Johnny R. Young Jr. was convicted, under Mississippi Code Annotated section 97 — 3—95(1)(d) (Rev.2006), of three counts of sexual battery of a minor and sentenced to three concurrent life sentences in the custody of the Mississippi Department of Corrections (MDOC). Young appeals his convictions, and finding no reversible error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. In June 2007, Young’s eight-year-old daughter, “Cindy,”[1] confided to a family friend, Richard Dunsford, and her paternal step-grandmother that her father had sexually assaulted her on numerous occasions during the past several years. The Union County Sheriffs Office was contacted, and with the involvement of Child Protective Services, it began an investigation. Cindy was interviewed by Angie Floyd, a forensic-interview specialist with the Children’s Advocacy Center in Tupelo, Mississippi, on June 26, 2007. Cindy also was examined in Memphis, Tennessee, at the Sexual Assault Resource Center by a sexual-assault nurse examiner, Elizabeth Thomas. In her report, Thomas noted that the exam findings were “consistent with [a] history of blunt penetrating trauma of the oral, rectal, hymen, and/or vaginal orifice.”
113. In November 2007, Young was indicted on three counts of sexual battery of a minor. The indictment referenced incidences occurring between November 3, 2005, and November 3, 2006. A jury trial was held September 21-28, 2009, and Young was convicted on all three counts. The circuit court sentenced Young to three concurrent life sentences in the custody of the MDOC. Young filed a motion for a judgment notwithstanding the verdict (JNOV) and, in the alternative, a motion for a new trial, which the circuit court denied. Young timely filed an appeal, alleging that the circuit judge had erred in the admission or exclusion of certain evidence and that the evidence was insufficient to support the verdict.
I. Whether the circuit court erred in admitting into evidence numerous out-of-court statements made by Cindy to other individuals.
¶ 4. Young filed a motion in li-mine to exclude various out-of-court statements made by Cindy, arguing that the statements were hearsay, prior consistent statements, and violations of the Confrontation Clause.[2] Young also made contemporaneous objections to the introduction of such evidence during the trial. Specifically objected to at trial were admission of the videotaped forensic interview conducted by Floyd, which was presented to the jury for viewing, and also the testimony of *815 Dunsford in whom Cindy had confided. Young argues on appeal that the admission of this evidence constituted error.
¶ 5. “The standard of review governing the admission or exclusion of evidence is abuse of discretion.” Catchings v. State, 39 So.3d 943, 950 (¶ 29) (Miss.Ct.App.2009) (citing Williams v. State, 991 So.2d 593, 597 (¶ 8) (Miss.2008)). A circuit court’s decision to admit or exclude evidence will only be reversed if it “result[s] in prejudice and harm or adversely affect[s] a substantial right of a party.” Id. at 951 (¶ 34) (quoting Hammons v. State, 918 So.2d 62, 65 (¶ 10) (Miss.2005)).
¶ 6. Since Cindy was under twelve years of age, the circuit court ruled that her statements fell under Mississippi Rule of Evidence 803(25), which is the tender-years hearsay exception. This rule provides:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
In assessing whether such testimony is reliable, the comments to the rule list several factors to be considered. These factors are:
(1) whether there is an apparent motive on declarant’s part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant’s faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declar-ant’s age, knowledge, and experience make it unlikely that the declarant fabricated.
M.R.E. 803(25) cmt.
¶ 7. We find no abuse of discretion in the court’s admission of the forensic interview and the out-of-court statements made by Cindy to Dunsford. The videotaped forensic interview showed Cindy spontaneously drawing pictures of the sexual abuse that occurred. Floyd testified that she did not prompt Cindy to draw the pictures; in fact, Floyd was not even present in the room when Cindy did so. Therefore, we find that it falls under the tender-years exception. Furthermore, the circuit judge, in addressing the contemporaneous objection to Dunsford’s testimony, thoroughly addressed the factors to be considered in allowing such hearsay evidence and appropriately applied them, stating:
This is a statement under 803(25), and that the child being the declarant, there’s been no proof of any motive to lie on her part or anything disparagement of character. It’s a statement that was only heard by the witness so that actually favors not allowing — clearly, the statements were [made] spontaneously. The timing and the relationships are not particularly notable issues. It does not appear that there’s any possibility of faulty recollection by the witness — by the declarant. This is by the declarant. That’s an issue of her being a child. Certainly, the statements were made.
*816 There’s no doubt that favors admission. Credibility about the person testifying has not been called into question. Age and maturity of the declarant is an issue for the jury. Whether suggestive techniques were used, obviously, it was made spontaneous. There was no inquiry made.
We find no abuse of the circuit court’s discretion in admitting Cindy’s prior statements at trial.
II. Whether the circuit court erred in admitting into evidence prior bad acts of Young as they were prejudicial.
¶ 8. Young filed a motion in limine to exclude evidence of prior bad acts, which the circuit judge denied. Anna Smith, Young’s half-sister, presented testimony that twenty years ago, when Young was fifteen years old and Anna was five years old, Young had Anna take off her pants, removed his pants, and bounced her on his leg, rubbing his penis against her. Anna’s mother, who was also Young’s stepmother, walked in and witnessed this event. Young was sent to Meridian, Mississippi, for several months to receive mental-health treatment. Additionally, Young’s father, Johnnie Edward Young Sr., testified that, in 2004, Cindy told him and his wife “that her daddy put his tongue on her bottom.”[3] As this incident occurred in 2004, the testimony concerns acts prior to those charged in the indictment. Young contends that the admission of this evidence was error, especially as it “was too remote in time and different from the events alleged by [Cindy],” and that the State “failed to establish the alternate basis for the admissibility of the evidence.”
¶ 9. Generally, under Mississippi Rule of Evidence 404(b), evidence submitted “to prove the character of a person in order to show that he acted in conformity therewith” is not admissible. However, in Derouen v. State, 994 So.2d 748 (Miss.2008), the Mississippi Supreme Court carved out an exception in cases that involve the sexual assault of a minor, stating:
Sex crimes against children are furtive, secret events usually lacking evidence other than the conflicting testimony of the defendant and the victim. The only viable proof of motive, intent, plan, knowledge, identity or absence of mistake or accident may be the pattern of abuse suffered by others at the hands of the defendant.
Id. at 754-55 (¶ 17) (quoting Lambert v. State, 724 So.2d 392, 895 (¶ 14) (Miss.1998) (Mills, J., dissenting)). The Derouen court concluded:
[Ejvidenee of a sexual offense, other than the one charged, which involves a victim other than the victim of the charged offense for which the accused is on trial .... [may be] properly admitted under Rule 404(b), [if] filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury[.]
Id. at 756 (¶ 20) .[4]
¶ 10. Although the incident concerning Anna was remote in years, we find that *817 this fact does not render her testimony inadmissible. The supreme court’s recent holding in Gore v. State, 37 So.3d 1178 (Miss.2010) addressed this identical issue. John T. Gore was indicted and later convicted of “ ‘gratifying his lust or indulging his depraved licentious sexual desires’ ... by ‘intentionally handling, touching, or rubbing with this hands or any part of his body of any member thereof,’ his twenty-one-month-old granddaughter[.]” Id. at 1180 (¶ 1). The circuit court admitted testimony by Gore’s adult children that during their juvenile years, Gore had required them to walk around their home naked. Id. at 1183-84 (¶ 14). His adult daughter also testified that when she was twelve, he had her sit naked on his lap and watch pornographic material on the computer, and Gore had sexually molested her on one occasion. Id. at 1184 (¶ 15). In Gore, the supreme court reiterated its holding in Derouen and found the evidence to be admissible. It concluded that “Gore’s pri- or sexual abuse of his daughter tends to demonstrate ‘pedophilic sexual activities with young and developing female juveniles. The defendant’s means of accomplishing these activities on past occasions bear substantial resemblance to each other and with the present offense.’ ” Id. at 1187 (¶ 20). Other courts have also held that mere passage of time between incidents of sexual assault does not require exclusion of the evidence. See United States v. Gabe, 237 F.3d 954, 960 (8th Cir.2001) (stating that testimony regarding a sexual assault that occurred twenty years earlier was admissible as it “tend[ed] to prove [defendant’s] propensity to molest young children in his family when presented with an opportunity to do so undetected”); State v. Driggers, 554 So.2d 720, 727 (La.Ct.App.1989) (finding no error in admitting evidence of other crimes that occurred seven to twenty-six years prior as victims’ ages were similar, and “the continuity and consistency with which the other crimes occurred indicate a pattern of behavior ....; [thus,] the mere passage of time, without more, does not require their exclusion”).[5] Similarly, while the incident with Anna occurred twenty years ago, it shows similar behavior on the part of the defendant and that the victims were of a similar age. The record also reflects that Young was questioned at trial regarding his mental-health treatment in 1989, with the State noting that there was a diagnosis of “sexual disorder, paraphilia, pedophilia[.]”
¶ 11. We find that the evidence of Young’s prior bad acts properly fell under the parameters set forth by the supreme court in Derouen and, therefore, was admissible. The circuit judge, noting that Derouen applied 404(b) to this specific fact situation, performed an on-the-record analysis and found that while the “particular evidence [was] prejudicial” under Missis *818 sippi Rule of Evidence 403, it “should be admitted under Rule 404(b).” Furthermore, the circuit court submitted to the jury appropriate limiting instructions. Jury Instruction S-2 stated:
The testimony of the [Sjtate’s witness, [Anna Smith], which is not part of charged conduct in this case, is to be used for the purpose of establishing motive, intent, plan, knowledge, identify, or absence of mistake or accident on the part of the defendant JOHNNIE R. YOUNG and should not be considered as proof of the defendant’s character or to show that he acted in conformity therewith.
An identical jury instruction was also given regarding the testimony of Young Sr. Young also admitted at trial that the incident with Anna occurred, and he testified to two other incidents with Anna that had occurred prior to that one.
¶ 12. Based upon Derouen, we find no abuse of discretion in the circuit court’s admission of this evidence, and this issue is without merit.
III. Whether the circuit court erred in admitting the expert testimony of Floyd, the forensic examiner.
¶ 18. Young contends that the circuit court erred in allowing Floyd to testify as an expert in forensic interviews, arguing that her methodology employed in the interviews “does not pass scrutiny under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).” Floyd had been employed as a forensic-interview specialist for the Family Resource Center of Northeast Mississippi in Tupelo since 2005. Prior to that, she was employed in the same capacity at the Children’s Advocacy Center in Mantachie, Mississippi, for a little over a year.
¶ 14. The “admission of expert testimony is governed by Rule 702 of the Mississippi Rules of Evidence and case law[.]” Carter v. State, 996 So.2d 112, 116 (¶ 13) (Miss.Ct.App.2008). The admission of such testimony is subject to the circuit court’s discretion and “will stand ‘unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.’ ” Id. (citation omitted). In Carter, this Court considered the expert testimony of two child-abuse forensic interviewers and deemed the testimony admissible, stating:
Clearly, the accuracy of forensic interviewing is largely untestable, and that Daubert factor therefore does not apply when determining the admissibility of such an expert’s testimony. We note that there is no evidence to suggest that the testimonies in question from [Keith] Stovall and Dr. [Catherine] Dixon failed to meet any of the other factors. Further, the procedure followed by Stovall is peer-reviewed, has general acceptance in the relevant community, and has standards that control the technique’s operation. In fact, [Bryant] Carter’s own witness, Dr. [Gary] Mooers, indicated that he had no problems with the procedure followed by the CAC.
Id. at 117 (¶ 16) (emphasis added). Also, in Lattimer v. State, 952 So.2d 206, 221(1138) (Miss.Ct.App.2006), this Court noted: “While an expert may not opine that an alleged child sex abuse victim has been truthful, the scope of permissible expert testimony under Rule 702 includes an expert’s opinion that the alleged victim’s characteristics are consistent with those of children who have been sexually abused.” (Quoting Elkins v. State, 918 So.2d 828, 832 (¶ 9) (Miss.Ct.App.2005)).
*819 ¶ 15. Although the circuit judge expressed his personal concern over forensic interviewing, he acknowledged that this Court has recognized it as an acceptable methodology, and he allowed Floyd to testify as an expert in that field. The circuit judge stated:
She’s testified for me before. That doesn’t mean she automatically has carte blanche to testify again, but this area has value. It’s dangerous, but it has value. It wouldn’t hurt my feelings if the Supreme Court said it didn’t have value, but they think it does, and I do too.
¶ 16. Young has offered no evidence to undermine our Carter analysis; therefore, we find no error in the circuit court’s admission of Floyd as an expert witness in the field of forensic interviewing.
IY. Whether the circuit court erred in admitting the expert testimony of Thomas.
¶ 17. Young claims that the circuit court erred in admitting Thomas as an expert witness to testify regarding her examination of Cindy. Young argues that Thomas “testified repeatedly regarding causation and beyond her disclosed opinions,” which was outside the scope of her expert designation.
¶ 18. To support his argument, Young cites Vaughn v. Mississippi Baptist Medical Center, 20 So.3d 645, 652 (¶ 20) (Miss.2009), which states that testimony from a nursing expert regarding diagnostic impressions is “impermissible” as they “are not qualified to make medical diagnoses or attest to the causes of illnesses.” The record reflects that Thomas testified as to the physical evidence that she found (i.e., the thinning of the hymen, the level of estrogenization, and scars in the anal area). Her testimony was that the examination results were “consistent with blunt penetrating trauma of the vaginal area and the anal area.” Thomas admitted that she was not a doctor, nor was she capable of rendering an opinion as to medical causation.
¶ 19. We find that admission of Thomas’s testimony was not in error. This Court has allowed and accepted a qualified and experienced nursing professional’s testimony “as to whether a victim’s injuries are consistent with a sexual assault.” Murray v. State, 20 So.3d 739, 742 (¶ 7) (Miss.Ct.App.2009). As in the present case, a registered nurse conducted a sexual-assault examination of the minor child in Murray after allegations of sexual assault. We found no error in the admittance of the nurse’s expert testimony at trial, concluding that “[sjince [the nurse] had personally conducted the examination of [the child], her testimony assisted the jury and was both relevant and reliable.” Id. Similarly, Thomas was qualified to conduct sexual-assault examinations, and her testimony regarding her personal examination of Cindy was “relevant and reliable” and of assistance to the jury. This assignment of error is without merit.
Y. Whether the circuit court’s refusal to qualify Young’s expert witness in the field of forensic interviewing was arbitrary and prejudicial to his defense.
¶ 20. The circuit court ruled that Young’s expert witness, Dr. Gary Mooers, was not qualified to provide expert testimony as a forensic interviewer. Young contends that Dr. Mooers has a more extensive education and more years of experience than Floyd and should have been allowed to testify as to how the forensic interview was conducted. Young concludes that this exclusion affected his constitutional rights and was reversible error.
*820 ¶ 21. In excluding this particular testimony, the circuit court stated:
[W]e all know that there’s a hands-on component to the jobs that we all do that is important .... and certainly, Dr. Mooers, I’m sure, knows a lot more things about a lot of things that Ms. Floyd does, but there’s no question in the Court’s mind he’s not anywhere near where she is in terms of training or experience in this field, forensic interviewing of children alleging sexual abuse.
Since I don’t like it in the first place and I think it’s ripe with problems to invite somebody else less qualified to critique somebody’s job in an area that’s filled with problems anyway and very difficult for the gate keeper to keep a lid on how that goes is only going to create more confusion for the jury and, clearly would be of a much more prejudicial than the prospects of it being probative or helpful to the fact finder. I’m happy for Dr. Mooers to testify about the field of social work, and you know, things that relate to that, but this business of second guessing an interview by having looked at a DVD of an interview and not having hands-on with the alleged victim or any of that is much more harmful than it had helpful in my opinion.
(Emphasis added). Testimony showed that Dr. Mooers, while highly trained and professionally educated in social work, was only nominally familiar with the methodology utilized by Floyd. Although Floyd was a student of Dr. Mooers while obtaining her Bachelor’s degree, Dr. Mooers admitted that he did not teach classes in forensic interviewing to her as those types of classes were generally “too specialized for an undergraduate course.” Furthermore, Dr. Mooers testified that “the interviewer was certainly competent and that he “didn’t have a criticism of how she did things.” Therefore, the circuit judge concluded:
[Ms. Floyd] works in a highly specialized area and has a lot of experience in that highly specialized area. Dr. Mooers does not. He’s not qualified to second guess those things that are highly specialized. Even though he has, I’m sure, taught many of those things, he’s not taught nor has he learned, apparently, the protocol that’s at issue here, that the Court has allowed.
We find no error in the circuit judge’s reasoning. Accordingly, this issue is without merit.
VI. Whether the prosecution’s closing statements were inflammatory and prejudicial and required a limiting instruction to the jury or a mistrial.
¶ 22. Young claims that during closing arguments, the State went beyond the record and “sought to appeal to the sympathy of the jury and not the facts and the reasonable inferences to be drawn therefrom.” Specifically, Young is referencing the comment made by the State to the jury: “Now [Cindy] has told /all, each and every one of y’all. Are you going to help her?” Young says this statement asked the jury to be advocates for the child, not fact-finders, and the State’s remarks were a modified version of a “golden rule” argument. “A golden rule argument asks the jurors to put themselves in the place of one of the parties.” Jones v. State, 962 So.2d 1268, 1275 (¶47) (Miss.2007) (citation omitted).
¶ 23. The State claims that Young waived this issue by failing to make any specific objections to the argument. However, the record reflects that defense counsel made an immediate objection to the State’s comment and requested a curative instruction. The judge overruled the *821 objection and denied the request, stating: “I see it is pretty close, but I don’t see that a curative instruction is going to cure anything if it was not proper, so I’m going to deny the request.” Young also requested a mistrial based upon the comments, which was also denied. Therefore, the issue was not waived.
¶ 24. The Mississippi Supreme Court has held that deference is given to a circuit court’s ruling regarding the propriety of a closing argument “because the [circuit] court is in the best position to determine if an alleged improper comment had a prejudicial effect; therefore, absent an abuse of that discretion, the [circuit] court’s ruling will stand.” Jones, 962 So.2d at 1275 (¶ 45) (citing Stevens v. State, 806 So.2d 1031, 1057 (¶ 114) (Miss.2001)). Counsel is “usually given wide latitude during closing arguments.” Young v. State, 791 So.2d 875, 880 (¶ 15) (Miss.Ct.App.2001) (citing McGilberry v. State, 741 So.2d 894, 910 (¶44) (Miss.1999)). As such, “when a jury is properly instructed that statements made by counsel are not evidence, reversal is not required.” Walker v. State, 913 So.2d 198, 240 (¶ 157) (Miss.2005) (citation omitted).
¶ 25. We do not find the State’s remark to be improper. The comment did not ask the jurors to put themselves in Cindy’s place and was not a “golden rule” argument. Nor do we find that the comment resulted in undue prejudice, particularly considering the circuit court submitted the following instruction to the jury: “Arguments, statements, and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. Any arguments, statements, and remarks having no basis in the evidence should be disregarded by you.” As this Court has stated, it is “well-settled law [that] jurors are presumed to follow the instructions given by the court.” Harris v. State, 37 So.3d 1237, 1247 (¶ 37) (Miss.Ct.App.2010) (citing Payne v. State, 462 So.2d 902, 904 (Miss.1984)).
¶ 26. Accordingly, we find that the State’s comment did not constitute reversible error, and this issue is without merit.
VII. Whether the circuit court erred in denying Young’s post-trial motions.
¶ 27. In his appeal to this Court, Young challenges the sufficiency of the evidence as it relates to his motion for a JNOV and, in the alternative, a motion for a new trial. “A motion for a JNOV challenges the legal sufficiency of the evidence.” Fulgham v. State, 12 So.3d 558, 562 (¶ 20) (Miss.Ct.App.2009) (citing Hearn v. State, 3 So.3d 722, 740 (¶53) (Miss.2008)). “[A] motion for a new trial challenges the weight of the evidence.” Id. (citing Hearn, 3 So.3d at 741 (¶ 56)). On appeal, Young claims that there was insufficient proof as to when the alleged incidents of sexual battery occurred and as to whether the incidents occurred at all.
¶ 28. Unless the denial of a motion for a JNOV “is such that fair-minded jurors could only find the defendant not guilty” with respect to one or more elements of the crime charged, it will not be disturbed on appeal. Id. (citing Hearn, 3 So.3d at 740 (¶ 54)). During the trial, Young moved for a directed verdict at the end of the State’s case-in-chief, alleging insufficient proof. The State responded:
She also said that this matter started as a very young age, and we’ve got testimony that three-years-old is the testimony and it happened up until the time that this was reported on the last chance when she was eight-and-a-half years old, your Honor. Those dates encompass that and she said it happened all the time, your Honor, and I think there’s *822 sufficient factual basis for this jury could find that she was penetrated in her anal, vaginal, and oral openings by this man with his penis; and that he is more than 18-years-old and she was under 14 years of age and he was more than 24 months older than her, and it happened in this county, your Honor.
Viewing the matter in the light most favorable to the non-movant, the circuit court denied Young’s motion for a directed verdict.
¶ 29. There was ample testimony that Cindy was sexually assaulted by Young and that it happened during the period alleged in the indictment. Cindy reported the sexual abuse in 2007, and she later testified as follows:
Q. And how old were you when this happened?
A. About — I don’t know how old I was when I was little, but I know it went on until I was eight-and-a-half.
Q. And you’re sure it happened until you were eight-and-a-half?
A. Yes.
Q. How many other times are you saying that this happened, Young Lady?
A. A lot at our house.
Q. And how young were you when you say this started?
A. I do not know that.
Q. You don’t remember?
A. Not when I was little. I was about five or six when it started happening.
If Cindy was approximately five years old when the sexual assault began, then it started in 2003 or 2004 (around the time when Cindy originally mentioned it to her grandfather) and continued until she reported it in 2007.
¶ 30. Viewing the evidence in light most favorable to the State, we find that a “fair-minded juror” could conclude that there was sufficient evidence that Young sexually assaulted Cindy as alleged in the indictment. Also, in considering the circuit court’s denial of the motion for a new trial, we do not find that the verdict is against the overwhelming weight of the evidence. The issue is without merit.
VIII. Whether the cumulative effect of errors require a reversal of Young’s conviction.
¶ 31. “This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal. However, where there was no reversible error in any part, there is no reversible error to the whole.” McLaurin v. State, 31 So.3d 1263, 1270 (¶ 35) (Miss.Ct.App.2009) (citing Bright v. State, 894 So.2d 590, 596 (¶ 31) (Miss.Ct.App.2004)). Finding that no individual errors exist on appeal, we find no cumulative error that would result in a reversal of Young’s conviction. Accordingly, we affirm the judgment of the circuit court.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY OF CONVICTION OF THREE COUNTS OF SEXUAL BATTERY AND SENTENCE OF THREE CONCURRENT LIFE SENTENCES IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO UNION COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS, *823 CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.

. To protect the identity of victims of sexual abuse, we substitute fictitious names for the victim and relatives of the victim through which the victim could be identified.

. Young did not renew his argument regarding the violation of the Confrontation Clause on appeal. Further, Cindy testified at trial and was subject to cross-examination; consequently, the introduction of her out-of-court statements did not violate the Confrontation Clause. See Bridgeman v. State, 58 So.3d 1208, 1213 (¶ 17) (Miss.Ct.App.2010) ("introduction of out-of-court statements, even if unreliable, does not violate the Confrontation Clause where declarant testifies at trial subject to full and effective cross-examination”) (citing United States v. Owens, 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988)).

. Young Sr. admitted that he did not report the 2004 incident to authorities, but he asked Cindy's mother not to let her be alone with her father.

. The Derouen court also stated that it was "time for this Court to consider amending the Mississippi Rules of Evidence by way of the adoption of rules modeled after Federal Rules of Evidence 413 and 414” and referred the issue to the Rules Committee "for study and recommendation to the en banc court.” Der-ouen, 994 So.2d at 756 (¶21). Federal Rule of Evidence 413 was enacted in 1994 to allow the admission of evidence of other crimes of sexual assault or child molestation to show propensity. "In a criminal case in which the defendant is accused of an offense of sexual *817 assault, evidence of the defendant’s commission of another offense or offenses is admissible, and may be considered bearing on any matter to which it is relevant.” F.R.E. 413(a).

. In 2001, Louisiana enacted Louisiana Code of Evidence article 412.2 in response to that state's jurisprudence concerning admission of evidence of other crimes in sexual-assault and child-molestation cases. The article states, in subsection (A), that: When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.