BARNES, J.,
for the Court:
¶ 1. Christopher Michael Carpenter was convicted on two counts of lustful touching of a child and sentenced to fifteen years on each count to be served in the custody of the Mississippi Department of Corrections (MDOC), with the sentences to run consecutively and fifteen years to be suspended, and five years of post-release supervision. Carpenter appeals his convictions, and finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 2009, Carpenter was living with his girlfriend and her seven-year-old daughter, “Hope.”[1] On March 14, 2009, Hope stayed overnight at her aunt’s home and revealed that Carpenter had made her watch “dirt/’ movies when the two were alone. The next morning, Hope additionally told her aunt that Carpenter would tickle her, “take and hide her panties,” and make her touch his “weewee.” The aunt quickly contacted family members, including Hope’s father. Hope reiterated to her father what she had told her aunt, and he contacted the police.
¶ 3. As a result, Hope was removed from her home by the Department of Human Services (DHS) and taken to a shelter. At the request of DHS, Dr. Jule Miller, a clinical psychiatrist, interviewed Hope on March 18, 2009, to establish her emotional and mental status to determine whether she should be permanently removed from the home. During the interview, Hope told Dr. Miller the same information she had related to others-that Carpenter made her watch movies with naked people in them, told her to “rub his private part up and down,” tickled her, and took her panties away.
¶ 4. On March 4, 2010, Carpenter was convicted on two counts of touching a child for lustful purposes and sentenced to fifteen years on each count in the custody of the MDOC, with the sentences to run consecutively and fifteen years to be suspended, with five years of post-release supervision. He subsequently filed a motion for a new trial, which the circuit court denied. Carpenter now appeals his convictions to this Court, claiming that the circuit court abused its discretion in the admission of evidence and that the circuit court improperly denied his motion for a mistrial.
DISCUSSION
I. Whether the circuit court misapplied Mississippi Rule of Evidence 803(4) by admitting into evidence the interview conducted by Dr. Miller.
¶ 5. “The standard of review applied to a circuit judge’s admission or exclusion of evidence and testimony is abuse of discretion.” Quinn v. State, 97 So.3d 92, 96 (¶ 10) (Miss.Ct.App.2012) (citing Wade v. State, 583 So.2d 965, 967 (Miss.1991)). Mississippi Rule of Evidence 803(4) provides that the following hearsay statements made for the purposes of medical diagnosis or treatment are admissible:
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the *1056 statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term “medical” refers to emotional and mental health as well as physical health.
Admission of hearsay testimony under Rule 803(4) involves a two-part test: “First, the declarant’s motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on in treatment.” Wilson v. State, 96 So.3d 721, 727 (¶ 16) (Miss.2012) (quoting Branch v. State, 998 So.2d 411, 414 (¶10) (Miss.2008)). Carpenter claims Hope did not see Dr. Miller for purposes of a medical diagnosis or treatment; therefore, the circuit court abused its discretion allowing Hope’s statements to Dr. Miller to be allowed into evidence.
¶ 6. We find no merit to Carpenter’s claim. Dr. Miller testified that DHS requested that he interview Hope to determine whether she had been sexually abused and to determine the best course of action for her.
Q. And what was the purpose of the evaluation?
A. DHS had contacted me and said [Hope] was in their shelter. And they wanted an evaluation done to see if she was sexually abused or not. I think their concern at that moment was what are they going to do with her, and if they have to keep her in their shelter and what could they do with her. They wanted that question done.
Dr. Miller also said that Hope’s mother had contacted him two days prior to being contacted by DHS to set up an appointment.
¶ 7. Furthermore, it was important for DHS to confirm through Dr. Miller’s interview that Hope was abused by a member of her household in order to remove her from that environment. “When the victim identifies someone in her household as her abuser, these statements are ‘reasonably pertinent to treatment and, consequently, reasonably relied upon by physicians in diagnosis and treatment.’ ” Pittman v. State, 109 So.3d 599, 602 (¶ 12) (Miss.Ct.App.2013) (quoting Eakes v. State, 665 So.2d 852, 866 (Miss.1995)). “The scope of Rule 803(4) encompasses a child’s identification of a molester under the theory that part of the treatment of an abused child includes reasonable efforts to isolate the child from the abuser.” Bridgeman v. State, 58 So.3d 1208, 1215 (¶ 32) (Miss.Ct.App.2010) (citing Rowlett v. State, 791 So.2d 319, 321 (¶ 4) (Miss.Ct.App.2001)).
¶ 8. Consequently, we find no abuse of discretion in the circuit court’s ruling that Dr. Miller’s interview was admissible as a hearsay exception under Rule 803(4), as isolation of a child from her abuser is part of the treatment for that child.
II. Whether the circuit court erred in failing to make a reliability determination regarding Hope’s statements to Dr. Miller.
¶ 9. Carpenter also contends that the circuit court erred in failing to make a determination of reliability concerning Hope’s statements to Dr. Miller. Both Mississippi Rules of Evidence 803(4) (medical diagnosis/treatment, supra) and 803(25) (the “tender years” exception) require that testimony be reliable or trustworthy. Hope was seven years old at the time of the interview; therefore, she would certainly qualify as a child of tender years. *1057 Carpenter argues that the judge did not submit an “on-the-record reliability determination.”
¶ 10. We find that the record does not support Carpenter’s claim. Prior to trial, the circuit court conducted a hearing outside the presence of the jury. At the hearing, the court heard testimony not only from Hope, but also from Hope’s aunt, her father, and the deputy sheriff that handled the case. The circuit judge determined:
Considering any apparent motive on the declarant’s part to lie, the general character of the declarant, the number of persons that were present and heard the statements that were made, the spontaneity of the statements made, the timing of the declaration, the relationship between the declarant and the witnesses, the possibility of faulty recollection, the certainty of the statements made, the credibility of the persons testifying about the statements, the age and maturity level of the declarant, whether any suggestive techniques were used in eliciting the statements, and whether the declarant’s age, knowledge, and experience make it unlikely or rather the likeliness of the declarant’s statement[s] being fabricated, and in toto including or considering the time, content, and circumstances of the statements made, the court finds it provides a substantial in-dicia of reliability, and accordingly, the [Sjtate’s motion is sustained[.]
(Emphasis added). Therefore, the circuit judge clearly made an affirmative finding of reliability concerning Hope’s statements under Rule 803(25).[2]
¶ 11. Hope’s statements in the recorded interview did not differ from Dr. Miller’s testimony and what other witnesses had testified to at trial. Hope also gave in-person testimony during the trial. In fact, defense counsel objected at trial (although not on appeal) that the interview was cumulative evidence. Accordingly, we find that the circuit court made an on-the-record finding of reliability regarding Hope’s statements and that the admission of the recorded interview into evidence was not an abuse of discretion.
III. Whether the circuit court allowed Dr. Miller to testify outside his field of expertise.
¶ 12. The circuit court admitted Dr. Miller as an expert in the field of clinical child psychiatry, to which the defense had no objection. During his testimony, Dr. Miller rendered his expert opinion that Hope displayed characteristics consistent with a child who had been sexually abused. The defense objected to this testimony, and the circuit judge overruled the objection. On appeal, Carpenter argues that since Dr. Miller was not offered as an expert in forensic examination of children, *1058 his testimony regarding whether the victim’s behavior and statements were consistent with a child who has been sexually abused was inadmissible.
¶ 13. Dr. Miller, who is board certified in child and adolescent psychiatry, stated that he had conducted numerous interviews with children who had been sexually abused.
Q. Doctor, through your education, your training, and your practice, have you had the opportunity to watch the behavior of children who suffer from all types of abuse, not just sexual abuse?
A. Yes.
Q. And have you been trained to assess those children who suffer from different types of abuse?
A. Yes.
Later, under cross-examination, he also testified:
Q. Okay. And have you had any specialized training for specifically being able to determine whether or not a child has been sexually abused?
A. That was contained in my child psychiatry training.
Dr. Miller admitted he had not attended any specialized forensic interview training; he had only received specialized training as a child psychiatrist. However, as the State notes on appeal:
While a forensic interview expert from a child advocacy center would have months of training and supervision in using the “finding words” accepted protocol, Dr. Miller had many years of medical education, internship and training, passed professional board tests, and had more than twenty years of practice in questioning and dealing with children’s problems on a daily basis.
(Emphasis added).
¶ 14. In Burbank v. State, 800 So.2d 540, 545 (¶ 11) (Miss.Ct.App.2001), this Court found no error in a clinical psychologist’s testimony, under Rule 803(4), that the result of her assessment “was consistent with a child that had been sexually abused.” We held: “This conclusion is proper and within the scope of expert testimony.” Id. During the interview, Dr. Miller asked Hope open-ended questions and tried to establish a rapport with the child. There is nothing to suggest that he specifically questioned her with the motive to elicit information for legal purposes. Dr. Miller did not testify as to the truth of Hope’s statements or as to whether she had, in fact, been sexually abused. Rather, he confirmed, based on his expertise and education, that her behavior was “consistent with other children that had been sexually abused.”
¶ 15. Thus, we find that the circuit court did not abuse its discretion in admitting Dr. Miller’s testimony, as it was within the scope of his expert-witness designation.
IV. Whether the circuit court erred in not granting the defense’s motion for a mistrial due to the fact that a juror fell asleep during the trial.
¶ 16. Carpenter claims that the circuit court should have declared a mistrial because one of the jurors was sleeping during presentation of the audio evidence of Hope’s interview with Dr. Miller. After the playing of the audio recording, defense counsel noted to the court that several jurors had been asleep during the playing of the recording. The circuit judge observed that Juror Three “did appear, in the court’s opinion, to be sleeping.” He *1059 denied the motion for a mistrial, but stated that he reserved the right to rule on the issue later. Carpenter argues on appeal: “The [circuit] court took into consideration whether to replace the sleeping juror with an alternate, but never ruled.”
¶ 17. The Mississippi Supreme Court has stated that a sleeping juror is a matter of “great concern” to the courts. See Church v. Massey, 697 So.2d 407, 414 (Miss.1997).
[However, t]his Court will not lightly interfere with a finding of fact made by the [circuit] judge in a criminal case, and it will reverse only when it is satisfied that the [circuit] court has erred in holding a juror competent, when this Court is clearly of the opinion that he was not a competent juror.
Id. (quoting Woodward v. State, 533 So.2d 418, 424 (Miss.1988) (vacated in part on other grounds)). In the present case, the record reflects that following the conclusion of testimony, the circuit judge appropriately replaced the sleeping juror with an alternate juror. See Miss.Code Ann. § 13-5-67 (Rev.2012) (“Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties.”). Therefore, we find that the circuit judge properly exercised his discretion in excusing Juror Three and replacing him with an alternate juror. This assignment of error is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNTS I AND II, TOUCHING OF A CHILD FOR LUSTFUL PURPOSES, AND SENTENCES OF FIFTEEN YEARS FOR EACH COUNT, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The name of the victim has been changed to protect her identity.

. Furthermore, the failure to make an affirmative finding under either Rule 803(4) or Rule 803(25) does not warrant an automatic reversal. In Anthony v. State, 23 So.3d 611, 619 (¶ 38) (Miss.Ct.App.2009), this Court stated:
[T]he circuit court failed to make an affirmative finding that the statements in the abuse record were made under circumstances substantially indicating trustworthiness. However, this Court has held that a [circuit] court’s failure to make a finding of "substantial indicia of reliability” under the “tender-years exception,” was not reversible error where there was sufficient evidence in the record supporting a finding of reliability. Sharp v. State, 862 So.2d 576, 580 (¶ 15) (Miss.Ct.App.2004). Likewise, we find the circuit court should not be reversed for failure to affirmatively find trustworthiness pursuant to [Rule] 803(4) under such circumstances. Since, taking the record as a whole, there is sufficient evidence to support a finding of trustworthiness, we find that admission of the abuse record was not reversible error.