# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00030-COA

JAMES C. NEWELL, JR. A/K/A JAMES C.                 APPELLANT
NEWELL A/K/A JAMES NEWELL A/K/A
CHUCK NEWELL

v.

STATE OF MISSISSIPPI                                           APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2012 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO TWENTY YEARS, WITH FIFTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $10,000 FINE |
| DISPOSITION: | REVERSED AND REMANDED - 09/23/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1. This appeal addresses James C. Newell's second trial after the Mississippi Supreme

Court in *Newell v. State*, 49 So. 3d 66 (Miss. 2010) (*Newell I*), reversed Newell's first

manslaughter conviction and remanded the case for a new trial.

FACTS AND PROCEDURAL HISTORY

¶2.    On April 30, 2008, Newell married his wife, Diane.  Within the next two weeks, Newell suspected Diane of cheating on him with Tony Hayes, and had contacted a lawyer about divorcing her.  On May 14, 2008, Diane moved out of their home in Vernon, Alabama. Later on that same day, around 5 p.m., Newell telephoned her and left two voice mail messages.  In the first message, Newell threatened to "pop a cap" in Diane and Tony; however, in the second message, Newell told Diane that they "were not worth it."  Later that night, Newell went to the Slab House, a bar in Lowndes County, Mississippi, to see if Diane was there with Tony.

¶3.    When Newell arrived at the Slab House around 9 p.m., he saw Adrian Boyette and Jason Hollis standing near Diane's truck.  Newell approached Boyette.  Newell testified that he asked Boyette if he knew where the owner of the truck they were standing near was. Several law enforcement officers testified that Newell had told them that he asked Boyette if he was the person who had been answering Diane's phone.  The conversation between Boyette and Newell became heated.  Newell walked back to his truck, followed by Boyette. As Newell was getting into his truck, Boyette slammed the truck door on Newell's leg.  After Newell closed the truck door, Boyette began beating on the hood of the truck, threatening to "[mess him] up."  During this time Newell removed the handgun he carried from the glove box and placed it beside him on the seat.  Boyette  pulled on the driver-side door.  Boyette threatened to "cut [Newell] up" and reached for his pocket.  Newell grabbed the gun, pushed the door open, and shot Boyette.  Newell jumped back in his truck and drove off to his home

2

in Vernon.

¶4.     Police soon arrived at the Slab House and put out a "BOLO," or be on the lookout, for Newell's vehicle. Soon after Newell arrived home, his sister called 911 to report that Newell was outside his house threatening to commit suicide with a gun. Police officers soon responded to the call. Investigator David Sullivan arrived to find Newell outside with a gun to his head, surrounded by other officers. Since Sullivan knew Newell personally, he sat on a bench next to Newell, talked with him, and convinced him to place the gun in his lap. During the conversation, Newell asked the police to check his truck for Boyette's fingerprints and to obtain Diane's cell phone to show that she had been talking to other men. After Sullivan ordered the truck fingerprinted and the phone seized, he was able to convince Newell to give him the gun and surrender peacefully. At trial, Newell testified that he was threatening to kill himself because he did not think anyone would believe that he shot Boyette in self-defense.

¶5.     After a three-day trial ending on August 24, 2012, the jury found Newell guilty. On September 7, 2012, Newell was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with five years suspended and fifteen years to serve. Also, the court required Newell to serve five years of post-release supervision and to pay a $10,000 fine. Newell now appeals.

DISCUSSION

¶6.     Newell is represented by the Indigent Appeals Division of the Office of the State Public Defender. On appeal, Newell's counsel raised the following six issues: (1) the verdict was not supported by the weight and/or sufficiency of the evidence; (2) the trial court erred

3

in giving several jury instructions; (3) the trial court erred in allowing Dr. Stephen Hayne to testify that Boyette was in a "guarded position" at the time of the shooting; (4) the trial court erred in allowing evidence of Newell's telephone messages from Diane's phone; (5) the trial court erred in allowing the State to read Hollis's testimony; and (6) the trial court erred in denying Newell's motion to dismiss for a violation of his constitutional right to a speedy trial. Additionally, Newell filed a pro se brief, asserting that his constitutional rights provided by the Fifth Amendment and the Due Process Clause were violated. We find that the trial court erred in allowing Dr. Hayne to testify to the position of Boyette's body at the time of the shooting; therefore, we reverse and remand for a new trial.

¶7.     Newell contends that the court erred in allowing Dr. Hayne to testify that the bullet wound was consistent with Boyette being in a guarded position.

¶8.     "[T]he admission of expert testimony is within the sound discretion of the trial judge. *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (¶4) (Miss. 2003) (citing *Puckett v. State*, 737 So. 2d 322, 342 (¶57) (Miss. 1999)). The trial judge's discretion must comply with the Mississippi Rules of Evidence. *Ross v. State*, 954 So. 2d 968, 996 (¶56) (Miss. 2007). "Reversal is proper only where such discretion has been abused and a substantial right of a party has been affected. The trial court's discretion must also [e]nsure the constitutional right of the accused to present a full defense in his or her case." *Id.* (internal citations omitted).

¶9.     Under Mississippi Rule of Evidence 702, (1) the expert's testimony must be "based upon sufficient facts or data," (2) it must be "the product of reliable principles and methods," and (3) the witness must have "applied the principles and methods reliably to the facts of the

4

case." The supreme court noted in *Parvin v. State*, 113 So. 3d 1243, 1247 (¶14) (Miss. 2013), that expert opinions

> must rise above mere speculation. Indefinite expert opinions, or those expressed in terms of mere possibilities, are not admissible. For example, we have held that an expert's offering a reasonable hypothesis was insufficient, explaining that expert testimony should be made of sterner stuff.

(Internal citations and quotations omitted).

¶10. At trial, the State questioned Dr. Hayne, asking:

Q:    Okay. And Dr. Hayne, are you familiar with a person being in a guarded position and things of [that] nature?

A:    Yes.

Q:    Okay. And in terms of this particular position of the entrance and exit wounds, do you have an opinion with respect to that, sir?

A:    It certainly is consistent with it.

Q:    It would be consistent with the individual seeing a gun pointing at him and putting himself in a - -

Newell's counsel objected to the testimony lacking foundation and being speculative. The court overruled the objection, noting that the defense could bring it out on cross-examination.

¶11. Dr. Hayne then continued:

A:    It would be consistent with that. It's consistent with other things, too, but it's consistent with that.

Q:    And would it also be consistent with an individual having their hands raised, based upon the location of the entrance wound?

A:    The left upper extremity could not be covering the entrance gunshot wound. It could be raised, it could be behind, it could be markedly forward.

¶12. Prior to testifying about Boyette's position at the time of the shooting, Dr. Hayne

5

offered no facts or evidence to support his contention that Boyette's singular gunshot wound was consistent with being in a guarded position. The State argues that Hollis testified that he saw Boyette step back with his hands in the air. However, on cross-examination, Hollis stated that the did not see Boyette prior to the shooting; he only looked after he heard the gunshot.

¶13. As the supreme court warned against in *Parvin*, 113 So. 3d at 1247 (¶14), Dr. Hayne testified to a "mere possibility." Dr. Hayne even noted that there were other possibilities as well, stating that Boyette's arm could have been "raised, . . . behind, . . . or markedly forward." Dr. Hayne's testimony regarding Boyette's "guarded position" does not rise above mere speculation, to meet the requirements of Rule 702. Because a substantial right of Newell's was affected, we reverse the conviction and remand the case for a new trial consistent with this opinion. We decline to address the merits of the other issues raised.

¶14. **THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.**

**IRVING, P.J., BARNES, ISHEE, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J.; ROBERTS AND MAXWELL, JJ., JOIN IN PART.**

**CARLTON, J., DISSENTING:**

¶15. I respectfully dissent. I would affirm the conviction and find no abuse of discretion by the trial court's admission of the expert opinion testimony of Dr. Hayne in this case. The record reflects that the trial court accepted Dr. Hayne as an expert in the field of forensic pathology without objection and that evidence in the record shows Dr. Hayne rendered expert

opinion testimony with a sufficiently reliable and relevant basis falling within the scope of his field of expertise.[1] Dr. Hayne's testimony reflects he relied upon the facts, data, measurements, and findings of his autopsy, internal and external examination, photographs, autopsy body-illustration diagram, and the crime scene to render his expert opinion that the wounds of the victim, Boyette, were consistent with the victim putting himself in a guarded position at the time of the shooting: his hands were raised or sufficiently forward with his chest area exposed where the bullet entered his body.[2]

¶16. Moreover, a review of Dr. Hayne's testimony in context in the record shows no abuse of discretion by the trial court in the admission of Dr. Hayne's expert opinion testimony. After being accepted as an expert in forensic pathology and also after describing the scope of that field, Dr. Hayne described the trajectory of the bullet wounds as determined from his autopsy. As acknowledged, Dr. Hayne relied upon his autopsy photographs, findings, and body-illustration diagram taken at the time of his autopsy of Boyette to assist in illustrating and explaining his testimony. The autopsy photographs and the body diagram showed the entrance and exit wounds suffered by Boyette.

¶17. The details of his testimony reflect that Dr. Hayne described the protocol for forensic autopsies, and then described his findings from the autopsy in this case, as he followed

---

[1] *See* M.R.E. 702 & 703; *Galloway v. State*, 122 So. 3d 614, 632 (¶29) (Miss. 2013).

[2] *See Ford v. State,* 975 So. 2d 859, 866-67 (¶¶24-26) (Miss. 2008) (treating physician's testimony did not mislead jury); *Berry v. State*, 980 So. 2d 936, 942 (¶21) (Miss. Ct. App. 2007), *cert denied*, 979 So. 2d 691 (Miss. 2008) (finding that an expert forensic pathologist's opinion as to the manner and cause of victim's death was not a legal conclusion, as he merely presented facts of which he was aware and gave his expert opinion as to the cause of death).

protocol, showing the bullet path and describing the wound as entering the body from the left and traveling to the right of the body on a downward twenty-degree trajectory. In so doing, he described a small abrasion or scrape of the skin located over the upper part of the forehead and slightly to the right, just below the hairline, measuring one and one-quarter inches. He also described an entrance gunshot wound on the left flank at a point nineteen and one-half inches below the top of the head and six inches forward from the back, or far-left chest wall. He described the entrance wound as circular, measuring three-eights of an inch in diameter. He described an elliptical-shaped exit gunshot wound located on the far-right side of the back and found at a point twenty-three and one-half inches below the top of the head and eight inches on the right side of his back, or far right.

¶18.    Without objection, Dr. Hayne testified that the significant finding of his autopsy was the wound tract coursing across the body, going from left to right and slightly down, going towards the back. Dr. Hayne further testified as to his findings regarding the injuries suffered internally relative to the bullet path, stating that the bullet entered the body between the sixth and seventh ribs through the intercostal muscles on the far-left side. Dr. Hayne explained that the bullet went through that muscle tissue, not striking either the sixth or seventh rib, and went through the diaphragm, a muscle separating the chest cavity from the abdominal cavity. He testified that the bullet also went through the aorta and pancreas, located just behind the abdominal cavity. The bullet also went through the liver and then the right kidney. The bullet then struck the ninth rib, partially fracturing the lower part of the ninth rib, and then exited the body. He also testified to the volume of blood loss to Boyette's vascular system. Significant to the position of the victim's body, Dr. Hayne testified that the

8

bullet path is determined by the initial travel of the bullet and that the bullet could change course slightly as it travels through the body. He gave his opinion that the wound tract was left to right, going down at approximately twenty degrees, and going towards the back at approximately twenty degrees.

¶19.   The State then asked Dr. Hayne if the entrance and exit wounds in this case were consistent with a person being in a guarded position, and Dr. Hayne explained that, in his opinion, the wounds were indeed consistent with a person positioning himself in a guarded manner. When asked whether Boyette's bullet wound was consistent with Boyette "seeing a gun pointing at him," Dr. Hayne answered, "It would be consistent with that. It's consistent with other things, too, but it's consistent with that." The record reflects that Dr. Hayes opined that the wound tract would be consistent with a person in a guarded position with his hands raised, based upon the location of the entrance wound, because the bullet entered through the upper-left chest wall. He explained that the upper-left extremity could not be covering the entrance gunshot wound. *See Galloway*, 122 So. 3d at 632 (¶29) ("[A] forensic pathologist may testify as to what produced a victim's injuries and what trauma such an injury would produce[,]" and may also testify about wounds, suffering, and the means of infliction of injury, since these matters fall within his or her area of expertise.).

¶20.   The record reflects a reliable and sufficient evidentiary foundation was laid before the State elicited Dr. Hayne's expert opinion now at issue. Significant to the issues before the court, the trial court admitted both the autopsy photographs and the autopsy body-illustration diagram into evidence without any objection. Newell also failed to object to Dr. Hayne's testimony as to his significant findings relative to the internal injuries or bullet trajectory, and

9

as previously acknowledged, Newell raised no objection to the trial court's acceptance of Dr. Hayne as an expert in the field of forensic pathology.

¶21. The record reflects that after qualification and acceptance of Dr. Hayne in the field of forensic pathology by the trial court, Dr. Hayne's testimony then laid the foundation for the scope of his field of expertise and for his expert opinions in this case. *See* M.R.E. 702. He testified as to multiple tasks in the field of forensic pathology, including performing post-mortem examinations and medical autopsies, as well as interpreting records, data, toxicology reports, scene-investigation reports, and also conveying that information to families, courts, and attorneys. Newell raised no objection to Dr. Hayne's testimony about the multiple tasks falling within the field of forensic pathology. The record reflects that the State elicited a sufficient evidentiary foundation to show that Dr. Hayne's expert opinion fell within the scope of his expertise.

¶22. This Court has acknowledged that trial courts in this state routinely allow forensic pathologists to offer opinion testimony regarding the position of the victim. *White v. State,* 964 So. 2d 1181, 1185-86 (¶11) (Miss. Ct. App. 2007); *Williams v. State*, 964 So. 2d 541, 547-48 (¶25) (Miss. Ct. App. 2007) (Dr. Hayne's testimony was properly admitted where he opined as to the position of the defendant's body in relation to the gun, since he was properly recognized as a forensic expert.). I submit that the record reflects no abuse of discretion in the admission of Dr. Hayne's expert opinion testimony by the trial court since the record reflects that this expert testimony possessed a reliable factual foundation based upon information from his autopsy findings, autopsy photographs, internal and external examinations, an autopsy body-illustration diagram, established protocol in his field, and his

10

expertise as an expert in forensic pathology.[3]

¶23. The record reflects a clear evidentiary foundation for Dr. Hayne's expert opinion. The record reflects that the evidence upon which Dr. Hayne based his expert opinion was admitted into evidence by the trial court without objection prior to his expert opinion testimony at issue. Additionally, the evidence presented at trial supported Dr. Hayne's expert opinion by showing the twenty-degree entrance and downward exit-wound path that crossed the victim's body. *See Darnell v. Darnell*, 2012-CA-01503-SCT, 2014 WL 1632246, at *9 (¶27) (Miss. Apr. 24, 2014).[4] The record reflects that Dr. Hayne's opinion testimony at issue here met the requirements of relevancy and reliability, which are required of expert opinion testimony by precedent and our rules of evidence.[5] *See* M.R.E. 401 & 402 (relevant evidence); *see also* M.R.E. 702 & 703 (expert opinion testimony). In addressing the issue

---

[3] *See Pitchford v. State*, 45 So. 3d 216, 246 (¶129) (Miss. 2010) (finding Dr. Hayne's testimony to be within the scope of forensic pathology when he testified that the wounds were consistent with the victim being shot up to three times with a handgun containing rat shot, five times with a .22 caliber weapon, and one to four times with the defendant's .38 caliber weapon); *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 36 (¶11) (Miss. 2003) (The trial court sits as the gatekeeper to assess whether the reasoning or methodology of expert testimony is relevant, reliable and applies to the facts of the case.).

[4] In *Darnell*, 2014 WL 1632246, at *9 (¶27) (citation omitted), the Mississippi Supreme Court recognized that "the scope of permissible expert testimony under Rule 702 includes an expert's opinion that the alleged victim's characteristics are consistent with those of children who have been sexually abused."

[5] *See McLemore*, 863 So. 2d at 36 (¶11). In *McLemore*, the Mississippi Supreme Court applied a modified *Daubert* analysis requiring expert opinion testimony to be both relevant and reliable. *Id.* The court held that "[t]he trial judge determines whether the testimony rests on a reliable foundation and is relevant in a particular case[,]" explaining that "[t]here must be a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* The *McLemore* court also stated that "[t]he party offering the expert's testimony must show that the expert has based his testimony on the methods and procedures of science, not merely his subjective beliefs or unsupported speculation." *Id.*

11

at bar, we must acknowledge that the trial court sits as the gatekeeper to assess whether the reasoning or methodology of expert testimony is relevant, reliable, and applies to the facts of the case. *See McLemore*, 863 So. 2d at 36 (¶11).[6]

¶24. The majority considers Dr. Hayne's testimony to be speculative. However, as stated, the record reflects that Dr. Hayne based his opinion upon findings resulting from his autopsy examination, as well as protocol normally used by those in his field. In *Darnell*, the Mississippi Supreme Court addressed expert opinion testimony, finding that

> Mississippi Rule of Evidence 703 permits an expert witness to base an opinion on facts, data, or opinions presented to the expert outside of court, without regard to whether such information has been or will be admitted . . . . However, such information must be of a type reasonably relied upon by experts in their discipline in forming opinions or inferences upon the subject.

*Darnell*, 2014 WL 1632246, at *10 (¶30). In comparison, the *Darnell* opinion explained that the scope of permissible expert testimony under Mississippi Rule of Evidence 702 included an expert's opinion that an alleged victim's characteristics were consistent with those of one who had been sexually abused. *See Pitchford v. State*, 45 So. 3d 216, 246 (¶129) (Miss. 2010); *See also Elkins v. State*, 918 So. 2d 828, 831-32 (¶9) (Miss. Ct. App. 2005).[7]

¶25. "The standard of review applied to a trial judge's admission or exclusion of evidence and testimony is abuse of discretion." *Carpenter v. State*, 132 So. 3d 1053, 1055 (¶5) (Miss.

---

[6] Appellate courts review the admission or exclusion of expert opinion testimony for abuse of discretion. *Abernathy v. State*, 30 So. 3d 320, 329 (¶36) (Miss. 2010); *Puckett v. State*, 737 So. 2d 322, 342 (¶57) (Miss. 1999).

[7] *See generally Gary v. State*, 11 So. 3d 769, 772 (¶¶10-11) (Miss. Ct. App. 2009).

Ct. App. 2013).[8] I respectfully submit that a review of the record reflects no abuse of discretion by the trial court in its admission of Dr. Hayne's opinion testimony at issue in this case. Accordingly, I must respectfully dissent from the majority's opinion.

**GRIFFIS, P.J., JOINS THIS OPINION. ROBERTS AND MAXWELL, JJ., JOIN THIS OPINION IN PART.**

---

[8] *See also Carpenter*, 132 So. 3d at 1057-58 (¶¶12-14); *Young v. State*, 106 So. 3d 811, 819 (¶¶18-19) (Miss. Ct. App. 2011) (testimony that victim's wounds were consistent with blunt force penetrating trauma of vaginal and anal area was not improper expert opinion testimony by nurse).