' CARLTON, J.,
dissenting:
¶ 15. I respectfully 'dissent. I would affirm the conviction and find no abuse of discretion by the trial court’s admission of the expert opinion testimony of Dr. Hayne in this ease. The record reflects that the trial court accepted Dr. Hayne as an expert in the field of forensic pathology without objection and that evidence in the record shows Dr. Hayne rendered expert opinion testimony with a sufficiently reliable and relevant basis falling within the scope of his field of expertise.[1] Dr. Hayne’s testimony reflects he relied upon the facts, data, measurements, and findings of his autopsy, internal and external examination, photographs, autopsy body-illustration diagram, and the crime scene to render his expert opinion that the wounds of the victim, Boyette, were consistent with the victim putting himself in a guarded position at the time of the shooting: his hands were raised or sufficiently forward with his chest area exposed where the bullet entered his body.[2]
¶ 16. Moreover, a review of Dr. Hayne’s testimony in context in' the record shows no abuse of discretion by the trial court in the admission of Dr. Hayne’s expert opinion testimony. After being accepted as an expert in forensic pathology and also after describing the scope of that field, Dr. Hayne described the trajectory of the bullet wounds as determined from his autopsy. As acknowledged, Dr. Hayne relied upon his autopsy photographs, findings, and body-illustration diagram taken at the *82 time of his autopsy of Boyette to assist in illustrating and explaining his testimony. The autopsy photographs and the body diagram showed the entrance and exit wounds suffered by Boyette.
¶ 17. The details of his testimony reflect that Dr. Hayne described the protocol for forensic autopsies, and then described his findings from the autopsy in this case, as he followed protocol, showing the bullet path and describing the wound as entering the body from the left and traveling to the right of the body on a downward twenty-degree trajectory. In so doing, he described a small abrasion or scrape of the skin located over the upper part of the forehead and slightly to the right, just below the hairline, measuring one and one-quarter inches. He also described an entrance gunshot wound on the left flank at a point nineteen and one-half inches below the top of the head and six inches forward from the back, or far-left chest wall. He described the entrance wound as circular, measuring three-eights of an inch in diameter. He described an elliptical-shaped exit gunshot wound located on the far-right side of the back and found at a point twenty-three and one-half inches below the top of the head and eight inches on the right side of his back, or far right.
¶ 18. Without objection, Dr. Hayne testified that the significant finding of his autopsy was the wound tract coursing across the body, going from left to right and slightly down, going towards the back. Dr. Hayne further testified as to his findings regarding the injuries suffered internally relative to the bullet path, stating that the bullet entered the body between the sixth and seventh ribs through the intercostal muscles on the far-left side. Dr. Hayne explained that the bullet went through that muscle tissue, not striking either the sixth or seventh rib, and went through the diaphragm, a muscle separating the chest cavity from the abdominal cavity. He testified that the bullet also went through the aorta and pancreas, located just behind the abdominal cavity. The bullet also went through the liver and then the right kidney. The bullet then struck the ninth rib, partially fracturing the lower part of the ninth rib, and then exited the body. He also testified to the volume of blood loss to Boyette’s vascular system. Significant to the position of the victim’s body, Dr. Hayne testified that the bullet path is determined by the initial travel of the bullet and that the bullet could change course slightly as it travels through the body. . He gave his opinion that the wound tract was left to right, going down at approximately twenty degrees, and going towards the back at approximately twenty degrees.
¶ 19. The State then asked Dr. Hayne if the entrance and exit wounds in this case were consistent with a person being in a guarded position, and Dr. Hayne explained that, in his opinion, the wounds were indeed consistent with a person positioning himself in a guarded manner. When asked whether Boyette’s bullet wound was consistent with Boyette “seeing a gun pointing at him,” Dr. Hayne answered, “It would be consistent, with that. It’s consistent with other things, too, but it’s consistent with that.” The record reflects that Dr. Hayne’s opined that the wound tract would be consistent with a person in a guarded position with his hands raised, based upon the location of the entrance wound, because the bullet entered through the upper-left chest wall. He explained that the upper-left extremity could not be covering the entrance gunshot wound. See Galloway, 122 So.3d at 632 (¶ 29) (“[A] forensic pathologist may testify as to what produced a victim’s injuries and what trauma such an injury would produce!,]” and may also testify about wounds, suffering, and the means of infliction of injury, since these matters fall within his or her area of expertise.).
*83 ¶ 20. The record reflects a reliable and sufficient evidentiary foundation was laid before the State elicited Dr. Hayne’s expert opinion now at issue. Significant to the issues before the court, the trial court admitted both the autopsy photographs and the autopsy body-illustration diagram into evidence without any objection. New-ell also failed to object to Dr. Hayne’s testimony as to his significant findings relative to the internal injuries or bullet trajectory, and as previously acknowledged, Newell raised no objection to the trial court’s acceptance of Dr. Hayne as an expert in the field of forensic pathology.
¶21. The record reflects that after qualification and acceptance of Dr. Hayne in the field of forensic pathology by the trial court, Dr. Hayne’s testimony then laid the foundation for the scope of his field of expertise and for his expert opinions in this case. See M.R.E. 702. He testified as to multiple tasks in the field of forensic pathology, including performing post-mortem examinations and medical autopsies, as well as interpreting records, data, toxicology reports, scene-investigation reports, and also conveying that information to families, courts, and attorneys. Newell raised no objection to Dr. Hayne’s testimony about the multiple tasks falling within the field of forensic pathology. The record reflects that the State elicited a sufficient evidentiary foundation to show that Dr. Hayne’s expert opinion fell within the scope of his expertise.
¶ 22. This Court has acknowledged that trial courts in this state routinely allow forensic pathologists to offer opinion testimony regarding the position of the victim. White v. State, 964 So.2d 1181, 1185-86 (¶ 11) (Miss.Ct.App.2007); Williams v. State, 964 So.2d 541, 547-48 (¶ 25) (Miss.Ct.App.2007) (Dr. Hayne’s testimony was properly admitted where he opined as to the position of the defendant’s body in relation to the gun, since he was properly recognized as a forensic expert.). I submit that the record reflects no abuse of discretion in the admission of Dr. Hayne’s expert opinion testimony by the trial court since the record reflects that this expert testimony possessed a reliable factual foundation based upon information from his autopsy findings, autopsy photographs, internal and external examinations, an autopsy body-illustration diagram, established protocol in his field, and his expertise as an expert in forensic pathology.[3]
¶ 23. The record reflects a clear eviden-tiary foundation for Dr. Hayne’s expert opinion. The record reflects that the evidence upon which Dr. Hayne based his expert opinion was admitted into evidence by the trial court without, objection prior to his expert opinion testimony at issue. Additionally, the evidence presented at trial supported Dr. Hayne’s expert opinion by showing the twenty-degree entrance and downward exit-wound path that crossed the victim’s body. See Darnell v. Darnell, 2012-CA-01503-SCT, 167 So.3d 195, 206 (¶ 27), at *9 (¶ 27) (Miss. Apr. 24, 2014).[4] The record reflects that Dr. Hayne’s opinion testimony at issue here met the requirements of relevancy and reliability, which are required of expert opinion testimony by precedent and our rules of evi *84 dence.[5] See M.R.E. 401 & 402 (relevant evidence); see also M.R.E. 702 & 703 (expert opinion testimony). In addressing the issue at bar, we must acknowledge that the trial court sits as the gatekeeper to assess whether the reasoning or methodology of expert testimony is relevant, reliable, and applies to the facts of the case. See McLemore, 863 So.2d at 36 (¶ 11).[6]
¶ 24. The majority considers Dr. Hayne’s testimony to be speculative. However, as stated, the record reflects that Dr. Hayne based his opinion upon findings resulting from his autopsy examination, as well as protocol normally used by those in his field. In Darnell, the Mississippi Supreme Court addressed expert opinion testimony, finding that
Mississippi Rule of Evidence 703 permits an expert witness to base an opinion on facts, data, or opinions presented to the expert outside of court, without regard to whether such information has been or will be admitted.... However, such information must be of a type reasonably relied upon by experts in their discipline in forming opinions or inferences upon the-subject.
Darnell, 167 So.3d at 206 (¶ 30), at *10 (¶ 30). In comparison, the Darnell opinion explained that the scope of permissible expert testimony under Mississippi Rule of Evidence 702 included an expert’s opinion that an alleged victim’s characteristics were consistent with those of one who had been sexually abused. See Pitchford v. State, 45 So.3d 216, 246 (¶ 129) (Miss.2010); See also Elkins v. State, 918 So.2d 828, 831-32 (¶ 9) (Miss.Ct.App.2005).[7]
¶25. “The standard of review applied to a trial judge’s admission or exclusion of evidence and testimony is abuse of discretion.” Carpenter v. State, 132 So.3d 1053, 1055 (¶ 5) (Miss.Ct.App.2013).[8] I respectfully submit that a review of the record reflects no abuse of discretion by the trial court, in its admission of Dr. Hayne’s opinion testimony at issue in this case. Accordingly, I must respectfully dissent from the majority’s opinion.
GRIFFIS, P.J., JOINS THIS OPINION. ROBERTS AND MAXWELL, JJ., JOIN THIS OPINION IN PART.

. See M.R.E. 702 & 703; Galloway v. State, 122 So.3d 614, 632 (¶ 29) (Miss.2013).

. See Ford v. State, 975 So.2d 859, 866-67 (¶¶ 24-26) (Miss.2008) (treating physician's testimony did not mislead jury); Berry v. State, 980 So.2d 936, 942 (¶ 21) (Miss.Ct.App.2007), cert. denied, 979 So.2d 691 (Miss.2008) (finding that an expert forensic pathologist’s opinion as to the manner and cause of victim’s death was not a legal conclusion, as he merely presented facts of which he was aware and gave his expert opinion as to the cause of death).

. See Pitchford v. State, 45 So.3d 216, 246 (¶ 129) (Miss.2010) (finding Dr. Hayne’s testimony to be within the scope of forensic pathology when he testified that the wounds were consistent with the victim being shot up to three times with a handgun containing rat shot, five times with a .22 caliber weapon, and one to four times with the defendant’s .38 caliber weapon); Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 36 (¶ 11) (Miss.2003) (The trial court sits as the gatekeeper to assess whether the reasoning or methodology of expert testimony is relevant, reliable and applies to the facts of the case.).

. In Darnell, 167 So.3d at 206 (¶ 27), at *9 (¶ 27) (citation omitted), the Mississippi Supreme Court recognized that “the scope of *84 permissible expert testimony-under Rule 702 includes an expert’s opinion that the alleged victim’s characteristics are consistent with those of children who have been sexually abused.”

. See McLemore, 863 So.2d at 36 (¶ 11). In McLemore, the Mississippi Supreme Court applied a modified Daubert analysis requiring expert opinion testimony to be both relevant and reliable. Id. The court held that "[t]he trial judge determines whether the testimony rests on a reliable foundation and is relevant in a particular case[,]” explaining that “[t]here must be a valid scientific connection to the pertinent inquiry as a precondition to admissibility.” Id. The McLemore court also stated that "[t]he party offering the expert's testimony must show that the expert has based his testimony on the methods and procedures of science, not merely his subjective beliefs or unsupported speculation." Id.

. Appellate courts review the admission or exclusion of expert opinion testimony for abuse of discretion. Abernathy v. State, 30 So.3d 320, 329 (¶ 36) (Miss.2010); Puckett v. State, 737 So.2d 322, 342 (¶ 57) (Miss.1999).

. See generally Gary v. State, 11 So.3d 769, 772 (¶¶ 10-11) (Miss.Ct.App.2009).

. See also Carpenter, 132 So.3d at 1057-58 (¶¶ 12-14); Young v. State, 106 So.3d 811, 819 (¶¶ 18-19) (Miss.Ct.App.2011) (testimony that victim’s wounds were consistent with blunt force penetrating trauma of vaginal and anal area was not improper expert opinion testimony by nurse).