# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00838-COA

LAMARCUS WALLACE A/K/A LaMARCUS WALLACE        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/2016 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR GERBER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MURDER AND SENTENCED TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE TO RUN CONSECUTIVELY TO ANY PREVIOUSLY IMPOSED SENTENCES |
| DISPOSITION: | AFFIRMED - 08/01/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND CARLTON, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     Lamarcus Wallace was convicted of murder by a Bolivar County Circuit Court jury. Wallace was sentenced to life in the custody of the Mississippi Department of Corrections, with the sentence to run consecutively to any previously imposed sentences.  His posttrial motion was denied, and he now appeals, asserting the following issues: (1) the trial court

erred by failing to grant a mistrial; (2) his right to confront witnesses was violated; (3) the State improperly commented on his failure to call an alibi witness; and (4) cumulative error requires reversal of his conviction.

**FACTS**

¶2. Around 7 p.m. on September 13, 2014, Officer Earl Hodges with the Cleveland Police Department responded to a disturbance call near Brewer Drive in Cleveland, Mississippi. Officer Hodges saw Wallace arguing with Tony Jones, also known as "Fat Cat." Officer Hodges testified that the call indicated Jones had a gun. Officer Hodges searched Jones and told Wallace to leave the area. Officer Hodges testified that as Wallace left, he made threatening statements to Jones. But Officer Hodges stated he could not remember the exact statements since his primary concern was making sure Jones did not have a gun.

¶3. Officer Darrin White also responded to the disturbance call. When Wallace left, Officer White heard him say to Jones, "It isn't over." Officer White thought Wallace's comment "sounded like revenge," as if "something [was] going to happen later."

¶4. On that same evening, around 9:15 p.m., Officer Emily McCain with the Cleveland Police Department responded to a shooting on Brewer Drive. When Officer McCain arrived she noticed Jones lying on the driveway and bleeding from multiple gunshot wounds. Jones died shortly thereafter. Officer White also responded and, after seeing that Jones had been shot, then went to look for Wallace.

¶5. Kimberly Thomas, Crystal Thomas, and Debra West were present when the shooting occurred. Kimberly testified that she was outside with West when she saw someone wearing

2

a black hooded jacket with the hood pulled over his head running toward where Jones was standing. This person then fired several shots at Jones. Kimberly did not see the assailant's face.

¶6. Crystal testified that she saw Wallace hiding behind a tree. She said although Wallace was wearing a black hooded jacket with the hood pulled over his head, she was able to see his face and immediately recognized him. Crystal then went inside the house, but could still see Wallace from an open window. According to Crystal, Wallace was "creeping" around and holding a gun. Once Crystal saw the gun, she ran outside. Before she reached the door, Crystal said she heard gunshots. West, who was dating Jones at the time, testified she was standing outside with Jones when a man ran towards them. The man said, "I told you I was going to get you b[****]-a[**] n[*****,]" and fired his gun at Jones.

¶7. Wallace testified in his own defense. He stated that he was in Greenville at 7 p.m.—the same time as the first incident in Cleveland—delivering drugs to a friend named Tavarous at a local car wash.

## DISCUSSION

### I. Mistrial

¶8. In his first issue on appeal, Wallace argues that the trial court should have sua sponte declared a mistrial because multiple jurors were seen sleeping during trial. At the end of the first day of trial, Wallace's attorney stated, "I do want to make one comment on the record before we leave. I just got a note from my partner that jurors number [two], [four], [nine], and [ten] were sleeping." On the second day of trial, Wallace's attorney stated that jurors

3

one, two, four, and ten had fallen asleep that morning. The trial court stated that it had been watching the jury and noticed juror four "appeared to perhaps have her eyes closed at one time." Ultimately, the trial court stated that it would continue to observe the jury to see if any jurors fell asleep.

¶9. Wallace did not request a mistrial. He did raise this issue in his posttrial motion. The trial court found no merit to this argument, stating that it "had not noticed any excessive inattentiveness." The trial court further stated, "The court did observe jury members that, on occasion, would close their eyes momentarily and thus appear to be asleep or inattentive, but who, on continued watching, would open their eyes and appear to give the witness the required attention." The trial court reiterated that these jurors were not asleep, instead they were "sufficiently attentive to dispel any claim of violation of due process."

¶10. Wallace relies upon *Carpenter v. State*, 132 So. 3d 1053 (Miss. Ct. App. 2013), for support. In *Carpenter*, the trial court was informed that several jurors fell asleep at one point during trial, and, as a result, the defendant requested a mistrial. *Id.* at 1058 (¶16). The trial court denied the motion but, noting that one of the jurors had been sleeping, replaced the sleeping juror with an alternate. *Id.* at 1058-59 (¶¶16-17). This Court found no abuse of discretion by the trial court. *Id.* at 1059 (¶17).

¶11. In this case, however, the trial court determined that no jurors had fallen asleep. Thus, the trial court was under no obligation to replace a juror with an alternate or sua sponte grant a mistrial. *See Hines v. State*, 417 So. 2d 924, 925 (Miss. 1982). This issue is without merit.

II. **Violation of Right to Confront Witnesses**

4

¶12. In his next issue, Wallace argues that his right to confront witnesses was violated because the forensic examiner who tested the gunshot-residue sample did not testify at trial. Chad Suggs was the forensic examiner from the Mississippi Crime Laboratory who tested the sample, but David Whitehead testified regarding the results of the test. As the chief of the Trace Evidence Section, Whitehead technically reviewed all the reports issued by the crime lab. The report itself was not admitted into evidence.

¶13. Specifically, Wallace contends that the State never made a preliminary finding that Suggs was unavailable to testify regarding the gunshot-residue test. In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the United States Supreme Court held that the Sixth Amendment Confrontation Clause bars the admission of "testimonial statements" made by a witness who does not appear at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. However, our supreme court has held on numerous occasions that technical reviewers can testify at trial in place of an analyst who actually conducted the test if the reviewers had personal knowledge of the testing procedures and were involved in the creation of the underlying reports. *See Armstead v. State*, 196 So. 3d 913, 919 (¶18) (Miss. 2016); *Hingle v. State*, 153 So. 3d 659, 665 (¶13) (Miss. 2014); *Grim v. State*, 102 So. 3d 1073, 1081 (¶22) (Miss. 2012); *Jenkins v. State*, 102 So. 3d 1063, 1069 (¶19) (Miss. 2012).

¶14. We note that during trial Wallace's attorney conceded that it was acceptable for Whitehead to testify rather than Suggs. Regardless, Whitehead testified that he served as the technical reviewer on the gunshot-residue test. According to Whitehead, he reviewed the

5

evidence and Suggs's analysis before signing the report. Whitehead also offered his own opinion regarding the test results, noting that the sample taken from the back of Wallace's right hand tested positive for gunshot residue. It is clear from his testimony that Whitehead was actively involved in the production of the report and had intimate knowledge of the testing procedures. This issue is without merit.

### III. State's Comment Regarding Alibi Witness

¶15. Wallace next argues that the trial court should have sua sponte declared a mistrial after the State commented on Wallace's failure to call an alleged alibi witness. During the State's cross-examination of Wallace, Wallace stated he was in Greenville at the time of the shooting, meeting his friend Tavarous. The State then asked, "Is Tavarous here today?" Wallace responded, "No." The State responded, "Oh. No further questions."

¶16. However, Wallace failed to object either during trial or in his posttrial motions; thus, this issue is procedurally barred. *Davis v. State*, 660 So. 2d 1228, 1246 (Miss. 1995). Regardless of the procedural bar, Wallace's argument is also without merit. "[G]enerally, 'the failure of either party to examine a witness equally accessible to both parties is not a proper subject for comment before a jury.'" *Pearson v. State*, 64 So. 3d 569, 575 (¶22) (Miss. Ct. App. 2011) (quoting *Ross v. State*, 603 So. 2d 857, 864 (Miss. 1992)). But

> the rule barring comment [does] not apply where a witness, while technically accessible to both parties, stood more available to the complaining party. Where a defendant fails to call a witness more available to him and presumptively in a closer relationship with him, the [S]tate is fully entitled to comment on the party's failure to call the witness.

*Ross*, 603 So. 2d at 864. In *Ross*, the defendant testified that he was fishing with his brother

at the time the crime was committed. *Id.* The supreme court held that due to the defendant's relationship to the alleged alibi witness, "the [S]tate had every entitlement to comment on the absence of testimony from" the defendant's alleged alibi witness. *Id.* In *Pearson*, this Court found that "[b]ased on [the defendant's] testimony that he was at home with his wife at the time the sale took place, . . . the State was permitted to delve into whether [the defendant] intended to call his wife to verify his alibi." *Pearson*, 64 So. 3d at 576 (¶24). Here, Wallace testified that Tavarous was his "homeboy," establishing their close relationship. Thus, the State's comment asking whether Tavarous would testify was not improper.

### IV. Cumulative Error

¶17. In his final issue, Wallace contends that all of the errors in his case, taken together, warrant relief. Under the cumulative-error doctrine, individual errors "may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007). "However, where there is no error in part, there can be no reversible error to the whole." *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007). Finding no error, there can be no cumulative error. This issue is without merit.

¶18. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**